**SIERRA CLUB, Plaintiff, Appellant,**

v.

**John O. MARSH, Jr., etc., et al.,
Defendants, Appellees.**

No. 90–1005.

United States Court of Appeals,
First Circuit.

Heard May 8, 1990.
Decided June 26, 1990.

Edward F. Lawson, Boston, Mass., with whom Tybe A. Brett, Portland, Me., and Weston, Patrick, Willard & Redding, Boston, Mass., were on brief, for plaintiff, appellant.

David C. Shilton, Atty., Land and Natural Resources Div., U.S. Dept. of Justice, with whom Richard B. Stewart, Asst. Atty. Gen., Michael J. Malmquist and Robert L. Klarquist, Attys., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., were on brief, for the federal defendants, appellees.

Anthony C. Roth, Washington, D.C., with whom Thomas G. Reeves, Augusta, Me., Chief Counsel, Maine Dept. of Transp., John Quarles, and Morgan, Lewis & Bockius, Washington, D.C., were on brief, for State of Me. Dept. of Transp., defendant, appellee.

Before CAMPBELL, Circuit Judge, ROSENN,[*] Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

This appeal marks the latest chapter in the encyclopedic saga chronicling the Sierra Club's challenge to Maine's development efforts on Sears Island, a 940–acre uninhabited land mass in upper Penobscot Bay. We find that the order appealed from—an order altering the conditions upon which a preliminary injunction was predicated but not affecting the operation of the injunction itself—does not fall within the purview

---

[*] Of the Third Circuit, sitting by designation.

of 28 U.S.C. § 1292(a)(1) and is not otherwise immediately appealable. Hence, we leave the chapter largely unread and all but the introductory pages uncut.

## I. BACKGROUND

To make a tedious tale tolerably terse, we eschew a lengthy historical narrative describing the trials and tribulations attendant to progress on the Sears Island project, secure in the certain knowledge that sources abound from which interested readers can quench their thirst for further detail. *See, e.g., Sierra Club v. Marsh,* 769 F.2d 868 (1st Cir.1985) (*Sierra I*); *Sierra Club v. Secretary of Transportation,* 779 F.2d 776 (1st Cir.1985) (*Sierra II*); *Sierra Club v. Secretary of the Army,* 820 F.2d 513 (1st Cir.1987) (*Sierra III*); *Sierra Club v. Marsh,* 701 F.Supp. 886 (D.Me. 1988) (*Sierra IV–A*); *Sierra Club v. Marsh,* 872 F.2d 497 (1st Cir.1989) (*Sierra IV–B*); *Sierra Club v. Marsh,* 714 F.Supp. 539 (D.Me.1989) (*Sierra IV–C*); *Sierra Club v. Marsh,* No. 88–0116, slip op. (D.Me. Nov. 1, 1989) (unpublished) (*Sierra IV–D*). It is crucial for our purposes, nonetheless, to instill an understanding of the etiology of the order to which error is assigned.

Plaintiff-appellant Sierra Club (Club), a nonprofit interest group concerned with environmental preservation, has fought the planned transformation of Sears Island tooth and nail. Initially, this court concluded that because the project would require the developer, the state of Maine, to dredge the channel, clear the island and build a causeway connecting the island to the mainland, the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347 (1982 & West Supp.1990) (NEPA), required the Federal Highway Administration (FHwA), a provider of project funding, to prepare an environmental impact statement (EIS). *Sierra I,* 769 F.2d at 882; *see also Sierra II,* 779 F.2d at 783–84 (requiring that appropriate causeway permits be procured). All work was halted. Eventually, FHwA and the Maine Department of Transportation (MDOT) adopted a final EIS and obtained all of the necessary permits from the United States Coast Guard and the Army Corps of Engineers (Corps). MDOT then proceeded to clear the site and started to build the causeway and cargo pier.

Plaintiff renewed its objections to continued development, this time asserting that the EIS neither adequately evaluated the environmental effects inherent in choosing the Sears Island site nor adequately explored other alternatives. Plaintiff also contended that a supplemental EIS (SEIS) was mandatory and should have been prepared. On these bases, the Club once again asked the district court to enjoin the work *pendente lite.*

At first, the district court denied the request for further injunctive relief. *Sierra IV–A,* 701 F.Supp. at 903. On appeal, we ordered reconsideration. *Sierra IV–B,* 872 F.2d at 504–05. The district court thereafter granted a preliminary injunction, finding that defendants (federal and state agencies and officials) had to comply more fully with three separate NEPA requirements. These related to (1) the need for an adequate evaluation of all reasonably foreseeable secondary impacts of developing a cargo terminal on Sears Island (the secondary impact requirement); (2) the need for an analysis and evaluation of all reasonable alternatives to the planned development (the reasonable alternative requirement); and (3) the need to study and cross-correlate newly emergent information to determine whether an SEIS was exigible (the SEIS requirement). *See Sierra IV–C,* 714 F.Supp. at 582–87. Noting that the other prerequisites to the issuance of interim injunctive relief were present, *id.* at 591–93, Judge Cyr enjoined the defendants from pursuing "all further project construction" pending either further order of court or compliance with NEPA, viz., satisfaction of the three enumerated requirements. *See id.* at 593. An order to this effect was entered on June 1, 1989. We shall from time to time refer to this unexpurgated injunction, and to the later amendment of it, by their respective entry dates. For ease in reference, we have excerpted the operative portions of the two orders and recorded them in an appendix hereto.

Complaining that the district court had misapprehended the administrative record, the defendants moved for reconsideration. They also asked permission to supplement the Record. When the court allowed supplementation, the defendants provided additional record citations and supporting affidavits designed to demonstrate that suitable evaluations of all foreseeable secondary impacts and potential alternatives had taken place. *See Sierra IV–D,* slip op. at 6. The district court accepted the proffer, reconsidered the matter, reversed its field, and granted summary judgment in defendants' favor on two of the three NEPA claims (the secondary impact requirement and the reasonable alternative requirement). To implement this decision, the court "amended" the June 1 order, leaving the injunction intact but making clear that it thereafter hung by but a single thread: proof of defendants' compliance with the SEIS requirement. Phrased another way, as of the date of the reconsidered order (November 1, 1989), the injunction was dependent only on FHwA and the Corps assessing the new information anent Searsport's onshore acreage requirements and determining whether the new information was sufficiently significant as to demand preparation of an SEIS (and if it was, proceeding to formulate the SEIS). *Id.* at 26–27.

The Club seeks to appeal from the November 1 order.[1]

## II. APPEALABILITY

■ As a general rule, "it has been a marked characteristic of the federal judicial system not to permit an appeal until a litigation has been concluded in the court of first instance." *Director, O.W.C.P. v. Bath Iron Works Corp.,* 853 F.2d 11, 13 (1st Cir.1988) (quoting *Radio Station WOW, Inc. v. Johnson,* 326 U.S. 120, 123, 65 S.Ct. 1475, 1478, 89 L.Ed. 2092 (1945)). There are, of course, exceptions which prove every rule. Congress authorized a departure from the finality rule in enacting

28 U.S.C. § 1292(a)(1) (1988), a statute which provides that, in general, the courts of appeals shall have jurisdiction of appeals from:

> Interlocutory orders of the district courts of the United States ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions....

The Club argues that because the November 1 order abbreviated the steps required to lift the June 1 injunction, the latter "modif[ied]" the former within the purview of the statute. Alternatively, the Club argues that the subsequent order "continu[ed]" the earlier one. We treat these asseverations separately.

### A. *Modification.*

The accepted lexigraphic definitions of the verb "modify" are vague and, to some extent, internally inconsistent. *See, e.g.,* Webster's Third New International Dictionary 1452 (1981) (defining "modify" to mean, *inter alia,* "to make more temperate and less extreme ... to limit or restrict the meaning of ... [to] alter without transforming ... to make a basic or important change in"); Black's Law Dictionary 905 (5th ed. 1979) (defining "modify" as meaning "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce."). It seems clear, therefore, that in enacting section 1292(a)(1), Congress used the verb as a term of art.

A modification inquiry under section 1292(a)(1) has two facets: a reviewing court must examine whether there was an underlying decree of an injunctive character, and if so, whether the ruling appealed from can fairly be said to have changed the underlying decree in a jurisdictionally significant way. *See Bradley v. Milliken,* 772 F.2d 266, 270 (6th Cir.1985); *see also Hoots v. Commonwealth of Pennsylvania,* 587 F.2d 1340, 1348 (3d Cir.1978). In this case,

---

1. Because the case was not finally resolved by entry of the November 1 order, the district court quite properly abjured the entry of a final judgment pursuant to Fed.R.Civ.P. Rule 54(b). On

the other hand, no party attempted to invoke the intermediate appeal procedure contained in 28 U.S.C. § 1292(b).

the first prong of the test is easily met; the June 1 order, which halted construction of the Sears Island project, was an injunction in the classic sense. Thus, the lens of our inquiry narrows to focus upon the manner in which the November 1 order altered, or related to, the original injunction.

In appraising whether appellate jurisdiction was triggered pursuant to section 1292(a)(1), we believe we should take a functional approach, looking not to the form of the district court's order but to its actual effect. *See Bradley*, 772 F.2d at 270; *United States v. Cities Serv. Co.*, 410 F.2d 662, 663 n. 1 (1st Cir.1969); *United States v. Platt Contracting Co.*, 324 F.2d 95, 97 (1st Cir.1963); *see also* 11 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2962 (1976); *cf. Spath v. NCAA*, 728 F.2d 25, 27 (1st Cir.1984) (in determining whether restraining order appealable, "substance must prevail over nomenclature").

On one level, of course, the November 1 order had an emendatory effect: since the district court, upon inspecting additional materials, thought better of its previous findings, the court "amended" its June 1 injunction to reflect that, as a matter of substantive NEPA law, the defendants had already complied with the first two conditions stated in the injunction. In authoring this recension, however, the district court did not change the command of the earlier injunction, relax its prohibitions, or release any respondent from its grip. Both before and after entry of the November 1 order, all defendants remained "enjoined from permitting, commencing, or continuing" any of the work. Consequently, the November 1 order had no immediate effect; it did not set the bulldozers loose, even though its entry enhanced the prospect that defendants, eventually, would be able to resume construction. Because the district court did not change the nature or scope of the judicially imposed prohibition, the court did not "modify" the injunction within the meaning of section 1292(a)(1). *Cf. Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279, 108 S.Ct. 1133, 1138, 99 L.Ed.2d 296 (1988) ("An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1).").

We offer a common sense parallel which we believe proves the point. Appellant initially sought an injunction due to appellees' supposed noncompliance with three NEPA requirements. If at that time the district court had rejected two of the grounds (or simply declined to reach them), yet granted complete injunctive relief on the basis of the third, appellant, having prevailed, could not have appealed. *See Little Earth of United Tribes, Inc. v. United States Dept. of HUD*, 738 F.2d 310, 314 (8th Cir.1984) ("No purpose whatever would be served by our considering whether the district court acted properly in denying on some grounds an injunction it decided to issue on other grounds."); *see also In re Public Serv. Co.*, 898 F.2d 1, 2 (1st Cir.1990) ("a party cannot appeal a judgment entered in its own favor"); *Bath Iron Works Corp. v. Coulombe*, 888 F.2d 179, 180 (1st Cir.1989) (similar). We see no reason why the Club should be better off, jurisdictionally, because the lower court brought the case to essentially the same posture in stages, rather than in one fell swoop.

### B. *Continuation.*

Appellant also asserts that, if the November 1 order cannot be read as "modifying" the June 1 injunction in the section 1292(a)(1) sense, it nevertheless had the effect of "continuing" the injunction and was appealable on that basis. This assertion, too, is flawed.

■ Consistent with our functional approach, we believe that, to be classified as an "order[ ] ... continuing" an injunction, a ruling must have a direct and demonstrable effect on the duration of a previously-issued injunction. In other words, the later order must extend or prolong the restraint. An order continues an injunction, for instance, where "without such order, the injunction would stand dissolved by lapse of the time fixed in the original order." *Dreutzer v. Frankfort Land Co.*, 65 F.

642, 644 (6th Cir.1895). There was no such temporal impact here. The June 1 injunction was issued without finite limit of time; when entered, it was to control until the last of three stipulated conditions had been fulfilled. The November 1 order effectively resolved two of the conditions, but left the restraint undisturbed pending fulfillment of the last remaining condition. As before, the injunction would expire when the final barrier erected by the district court was scaled. Hence, the injunction's longevity was unaffected.

At bottom, the Club seems to be arguing that, because the November 1 order made it more likely that the defendants would be able to doff the injunction's shackles sooner, no more was needed to confer appellate jurisdiction. But section 1292(a)(1), as we interpret it, requires a more direct temporal effect before an order can be said to "continue" an existing injunction. *Cf., e.g., Cohen v. Board of Trustees,* 867 F.2d 1455, 1464 (3d Cir.1989) (order which makes postponement or acceleration of an injunction's resolution more or less likely not necessarily appealable on that basis under section 1292(a)(1)). To embrace the Club's contrary contention would be tantamount to ruling that, after an injunction issues, virtually any order relating to it is immediately appealable. Such an interpretation would, we think, countervail the statutory purpose undergirding section 1292(a)(1).

■ Normally, orders must be "final" before appeals can be taken. *Director, O.W.C.P.,* 853 F.2d at 13. We have made it crystal clear that the finality principle "should be accorded great deference." *In re Recticel Foam Corp.,* 859 F.2d 1000, 1006 (1st Cir.1988); *see also Flanagan v. United States,* 465 U.S. 259, 264, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984) (finality principle is "crucial to the efficient administration of justice"). Section 1292(a)(1) is a legislatively mandated exception to the rule, grounded in the "developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955) (footnote omitted). Because "Congress intended appeals from interlocutory orders to be strictly limited to the unusual situations wherein such appeals are expressly authorized," section 1292 must be strictly construed. *See St. Louis Shipbuilding & Steel Co. v. Petroleum Barge Co.,* 249 F.2d 905, 907 (8th Cir.1957); *cf. New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 186 (1st Cir.1972) (rejecting broad interpretation of "injunction" as used in section 1292(a)). The statute "does not authorize appeals [merely] to simplify litigation." *Baltimore Contractors,* 348 U.S. at 185, 75 S.Ct. at 254.

Against this backdrop, we are unwilling to adopt a more expansive reading of section 1292(a)(1) than is logically required. Multiple appeals in a single litigation are necessarily disruptive and, if freely allowed, subject to abuse. Appellant's reading of the statute would sanction an interlocutory appeal at every succeeding step after an injunction had been granted, thereby opening Pandora's jar. *Cf. Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 46 (1st Cir.1988) (discussing, in the Fed.R. Civ.P. 54(b) context, "the four horsemen of too easily available appellate review: congestion, duplication, delay, and added expenses"). We do not think that Congress intended intermediate appeals to be so readily available just because an injunction was in the picture.

Inasmuch as the November 1 order "was a step in controlling the litigation before the trial court," *Baltimore Contractors,* 348 U.S. at 185, 75 S.Ct. at 254, not increasing the duration of an injunctive decree, it was not immediately appealable.[2]

---

**2.** Such a result commends itself to us particularly where, as here, no injustice will stem from the denial of interlocutory review. The district court's November 1 determination as to defendants' compliance with the secondary impact and reasonable alternative requirements can effectively be reviewed, along with the court's conclusions as to the need for an SEIS, at such time as the injunction is dissolved, *see* 28 U.S.C. § 1292(a)(1), or when a final judgment is entered below, *see* 28 U.S.C. § 1291.

## III. CONCLUSION

To recapitulate, we find that the November 1 order did not affect the operation of the June 1 injunction in a way that triggered appellate jurisdiction under 28 U.S.C. § 1292(a)(1). The preliminary injunction remains in place, its command unaltered, its duration unchanged. Construction of the project remains at a standstill pending full NEPA compliance. The November 1 order neither modified nor continued the injunction in any jurisdictionally significant respect.

We need go no further.[3] In the present posture of the case, an interlocutory appeal will not lie. The Club, yearning for the blossom when only the bud is ready, has come to us prematurely.

*The appeal is dismissed for want of appellate jurisdiction. Costs in favor of appellees.*

### APPENDIX

The June 1 order read in material part:
[A]ll of the federal and state defendants ... are hereby restrained and enjoined from permitting, commencing, or continuing, any causeway, roadway, building, pier cell or other improvement relating to the development of a marine cargo terminal and industrial park on Sears Island, pending either further order of this court or compliance by the FHwA and the Corps with: a) the NEPA requirement of an adequate evaluation of all reasonably foreseeable secondary impacts of developing a cargo terminal on Sears Island; b) the NEPA requirement of evaluation of all reasonable alternatives to the proposed project; and c) the

NEPA requirement that all new information be assessed with a view to determining whether its environmental significance requires preparation of a supplemental EIS.

The November 1 order amended this language to read:
The federal and state defendants ... are hereby restrained and enjoined from permitting, commencing, or continuing, any causeway, roadway, building, pier cell or other improvement relating to the development of a marine cargo terminal and industrial park on Sears Island, pending either further order of this court or compliance by the FHwA and the Corps with the NEPA requirement that all new information be assessed with a view to determining whether its environmental significance requires preparation of a supplemental EIS.

---

**3.** Because we conclude that the November 1 order was not an order "modifying" or "continuing" an injunction within the intendment of 28 U.S.C. § 1292(a)(1), we need not determine whether it might also lack immediate appealability under the rule of *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) and *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). *See generally Chronicle Pub. Co. v. Hantzis,* 902 F.2d 1028, 1030 (1st Cir.1990) ("not every order in the form of an injunction is an injunction for purposes of interlocutory appeal under ... § 1292(a)(1)") (quot-

ing *Polyplastics, Inc. v. Transconex, Inc.,* 713 F.2d 875, 880 (1st Cir.1983)). By the same token, our principal determination relieves us of any necessity of addressing appellant's reply argument that *Carson* and its progeny do not apply to orders explicitly granting or denying motions for injunctive relief. *See, e.g., Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,* 875 F.2d 1174, 1176 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990); *Tri–State Generation and Transmission Assn., Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1351 (10th Cir.1989).