BREYER, Chief Judge.
 

 This appeal arises out of a set of consolidated cases concerning the Commonwealth of Massachusetts’ care and education of its mentally retarded citizens. Plaintiffs first brought these cases against the state in the early 1970’s. In 1977 the district court entered a set of consent decrees, aimed at improving care conditions, and the court, during the next several years, actively oversaw their implementation. By 1986, conditions had improved to the point where, on October 9, 1986, the court entered an order (the “October 1986 Order”) which, in the court’s view, represented a “step of disengagement.” The Order required the state to create an Office of Quality Assurance (“OQA”), to monitor further compliance with the decrees, to assure mentally retarded persons of the services to which the law entitled them, and to carry out various related responsibilities. It set forth a list of specific “tasks” that the state was to accomplish. The October 1986 Order seemed to contemplate the court’s final withdrawal from supervision of the consent decrees after three years, for it said that “[djuring the three years following this court’s disengagement, the parties and the [OQA] Director may seek this court’s counsel or clarification as to its orders.” It added that “[n]inety (90) days prior to the end of this three year period, the court shall hold a hearing to review implementation of this final order.” It said, in an Appendix, that the OQA was “initially chartered for a three year term.” And, in the opinion explaining the Order, the court said that the OQA “shall be maintained by the Commonwealth for a three year period, to
 
 *765
 
 commence on the date of this court’s disengagement.”
 

 As October 1989 approached, the parties agreed to extend the October 1986 Order. In September 1989, the court ordered that “[a]ll provisions of the order and memorandum -entered on October 9, 1986 ... shall remain in effect until June 30, 1990.” Subsequently, with the parties’ consent (with either both consenting, or with one consenting and the other acquiescing), the court further extended its October 1986 Order— to September 30, 1990, then to December 31, 1990, then to March 31, 1991, then to June 30, 1991, then to September 30, 1991, then to December 31, 1991, and, then to June 30, 1992.
 

 On March 13, 1992, the state defendants moved for “a hearing in June, 1992, or at the Court’s convenience in that period, ‘to review implementation’ ” of the October 1986 Order. The district court asked the parties to file reports on the status of the state’s compliance. On April 2 the court requested further detailed submissions, including a report from OQA; it set forth a timetable for those submissions; and, it said that after it had received those submissions, it would schedule a further conference. The defendants protested that the court’s request for detailed submissions indicated that the court was imposing upon them new duties, not previously foreseen or agreed to; they asked the court for an interpretation of the October 1986 Order and various underlying consent decrees. On April 24, the court responded that the “defendants’ recent filings indicate ... the likelihood, if not inevitability, of an eviden-tiary hearing____” It added that the issues the defendants had raised would be decided after the hearing and after the parties had “an opportunity to state their respective positions in briefs and at oral argument.”
 

 About six weeks later, in early June, the plaintiffs moved to “extend all provisions of ... [the October 1986 Order], including an extension of the Office of Quality Assurance’s term, up to and including December 31, 1992.” On June 24, 1992, the district court granted the plaintiffs’ motion, thereby extending the October 1986 Order for six more months. The district court considered the request for extension “reasonable,” in light of the facts that plaintiffs were supposed to respond to the defendants’ submissions by mid-July, that the OQA was to submit a report by mid-August, and that the court, thereafter, would have “to assess defendants’ compli-ance____”
 

 Defendants now appeal the district court’s order of June 24, 1992, extending the October 1986 Order for six months (the “June 1992 extension”). They basically claim that the district court should have permitted the October 1986 Order to terminate because they had completed all the “tasks,” and fulfilled all the requirements, that it- contained — a claim that plaintiffs strongly dispute. Plaintiffs add that we should not decide whether the defendants have, or have not, fulfilled their obligations under the October 1986 Order because the district court has not yet had the opportunity to determine the matter. They argue that we lack jurisdiction to hear this interlocutory appeal.
 

 We agree with the plaintiffs that we lack jurisdiction to hear this appeal. The June 1992 extension is not a “final” order within the meaning of 28 U.S.C. § 1291; nor does it fall within the statutory exceptions permitting appeals of certain “interlocutory” orders. 28 U.S.C. § 1292. Common sense suggests that this court should withhold its review until the district court enters an order on the merits, either accepting or rejecting defendants’ claim of compliance. Such a decision, coming after all the parties have submitted relevant materials to the district court, would permit any subsequent appellate review to take place on a complete record, aided by the district court’s own analysis and opinion. Moreover, the record indicates that the district court intends to consider the matter both thoroughly and expeditiously. Thus, the time needed to bring about a considered district court decision on the merits is comparatively short, given the many years this important litigation has been before the judiciary; and the added burden upon the state, in maintaining the existence of the OQA for
 
 *766
 
 six more months, is comparatively small.
 
 Cf. Carson v. American Brands, Inc.,
 
 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981) (§ 1292(a)(1) provides for interlocutory appellate review over an order denying an injunction, where plaintiff shows that order might have a serious, perhaps irreparable, consequence, and that order can be effectually challenged only by immediate appeal);
 
 Kartell v. Blue Shield of Massachusetts, Inc.,
 
 687 F.2d 543, 551-52 (1st Cir.1982) (same).
 

 The only significant legal question before us is whether, despite the dictates of common sense, we must hear this appeal on the grounds that the June 1992 extension falls within the literal terms of the jurisdictional statute, permitting appeals from “[interlocutory orders of the district courts ... continuing ... injunctions____” 28 U.S.C. § 1292(a)(1). The defendants argue that the June 1992 extension of the October 1986 Order is an “interlocutory order” that “continu[es]” an injunction. In our view, however, the June 1992 extension does
 
 not
 
 continue an injunction that would have otherwise stood “dissolved by lapse of the time fixed in the original order.”
 
 Sierra Club v. Marsh,
 
 907 F.2d 210, 213 (1st Cir. 1990) (citation omitted). A careful reading of the October 1986 Order indicates that the Order was
 
 not
 
 to expire automatically at a set time (initially set at three years) after its entry. Rather, the Order says that the parties may “seek” the court’s “counsel” during the set three years and that “[njinety (90) days prior to the end of this three year period, the court shall hold a hearing to review implementation____” One might say that the Order
 
 contemplates
 
 termination after the set time; one can add that it requires the district court to plan a hearing to consider compliance three months prior to the expiration of the set time; but one cannot fairly say that the Order, by its own terms, simply expires while the court is in the midst of the very “compliance determination” proceedings that the Order contemplates. To the contrary, the decree, technically • speaking, would seem to expire only
 
 after
 
 the court, proceeding with reasonable speed, has held the required hearing and found compliance. This interpretation draws support from the district court’s own interpretation of the October 1986 Order, when (in 1989) that court wrote:
 

 In my order of October 9, 1986, I provided for a three year period during which defendants were to complete a number of projects affecting the various institutions covered by the underlying consent decrees. The completion of these tasks was, and remains, a prerequisite to this court’s disengagement in these cases. Recognizing that it was uncertain as to whether all that, remained to be done could be completed within the three year period, the October 9, 1986 order provided that I would review the situation during the fall of 1989.
 

 We concede that the October 1986 Order also says that the OQA will “be initially chartered for a three year term” and that the district court also said the OQA “shall be maintained by the Commonwealth for a three year period____” But we cannot read these words (the first found in the Order’s Appendix; the second found in the Opinion, not the Order) as creating a kind of automatic termination in the midst of compliance proceedings and (as just explained) contrary to the Order’s apparent intent.
 

 Since we cannot read the June 1992 extension as, technically speaking, “continuing” an injunction that would have otherwise expired, we are legally free to consider the matter from a practical point of view.
 
 See Marsh,
 
 907 F.2d at 214 & n. 2. And the common sense considerations outlined above lead us to conclude that, as a practical matter, the June 1992 extension represents a brief procedural delay, necessary for the district court to resolve properly the substantive issues. That being so, it does not fall within the scope of 28 U.S.C. 1292(a)(l)’s language giving us jurisdiction.
 
 Id.
 
 at 214-15 (refusing interlocutory appellate review over a district court order that “was a step in controlling the litigation before the trial court” and did not continue an injunction “in any jurisdictionally significant respect”) (citation omitted). Consequently, we must dismiss this appeal.
 

 
 *767
 
 Since the question of jurisdiction is a fairly close one, we add that it would not likely benefit the appellants to obtain jurisdiction, for the practical, common sense considerations we have mentioned would balance heavily in favor of permitting a six-. month procedurally-necessitated extension of the October 1986 Order’s life.
 
 Cf. Planned Parenthood League v. Bellotti,
 
 641 F.2d 1006, 1009, 1023 (1st Cir.1981) (issuance of preliminary injunction depends upon balance of harms, equities, and public interest, as well as likelihood of success on the merits);
 
 Chalk v. United States Disk Court Cent. Dist.,
 
 840 F.2d 701, 704 (9th Cir.1988) (basic function of preliminary injunction is to preserve
 
 status quo
 
 pending determination of action on merits).
 

 Regardless, for the jurisdictional reasons discussed, the appeal is
 

 Dismissed.