**Frank BOGARD, et al., Plaintiffs–Appellees,**

v.

**Robert WRIGHT, Director of the Illinois Department of Public Aid, et al., Defendants–Appellants.**

**No. 97–2926.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1998.

Decided Oct. 28, 1998.

Diane Redleaf (argued), Robert E. Lehrer, Lehrer & Redleaf, Chicago, IL, for Plaintiffs–Appellees.

Rita M. Novak, Office of the Attorney General, Chicago, IL; Jeremiah Marsh (argued), John L. Rogers, Claudette P. Miller, Hopkins & Sutter, Chicago, IL, for Defendants–Appellants.

Before POSNER, Chief Judge, and RIPPLE and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

A class consisting of mentally retarded citizens of Illinois who reside in nursing homes sued the state agencies that are responsible for their care. Filed in 1988, the suit complained that the state had violated the federal constitutional and statutory rights of the class members by placing them in nursing homes rather than in less restrictive environments. The suit was resolved by the entry of a consent decree in 1993 that provided for extensive injunctive relief—the kind of "regulatory" relief that is common in institutional reform litigation, such as this suit. See, e.g., *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *United States v. Board of School Commissioners,* 128 F.3d 507 (7th Cir.1997); *People Who Care v. Rockford Board of Education,* 111 F.3d 528 (7th Cir. 1997). Included was a provision for the appointment by the district court of a "monitor" to report on, and assist with, the progress of the defendants in complying with the decree. The provision (Article VIII) ended by stating that "the monitor's activities shall be terminated on June 30, 1997 unless extended by order of this court." Two weeks before that termination date, the district judge ordered the monitor extended for three years. This was done over the objection of the state, which contended that it had substantially complied with the decree and so there was no further need for the monitor, whose fees and expenses come to about $150,000 a year, paid for by the state. The state now appeals from the order extending the monitor's term, arguing that before taking this step the judge should have conducted an evidentiary hearing to determine whether, as the state claims, substantial compliance has been achieved.

■ A panel of this court, in an unpublished order, denied the plaintiffs' motion to dismiss the appeal for want of appellate jurisdiction. Such an order does not, however, preclude the merits panel from revisiting the jurisdictional issue. *United States v. City of Milwaukee,* 144 F.3d 524, 526 n. 1 (7th Cir. 1998); *Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1124 (7th Cir.1997); *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir.1991).

With the benefit of additional briefing and of oral argument, we have concluded that we lack jurisdiction.

■ The order extending the monitor was not a final decision appealable under 28 U.S.C. § 1291. It is true that the consent decree, though in a sense interlocutory because it contemplated continued proceedings in the district court to effect compliance with the regulatory terms of the decree, was a final decision for purposes of section 1291. *Inmates of Suffolk County Jail v. Rouse,* 129 F.3d 649, 654 (1st Cir.1997); *Edwards v. City of Houston,* 78 F.3d 983, 993 (5th Cir.1996); *Stone v. City & County of San Francisco,* 968 F.2d 850, 854 (9th Cir.1992); cf. *Rufo v. Inmates of Suffolk County Jail, supra,* 502 U.S. at 391, 112 S.Ct. 748; *Balark v. City of Chicago,* 81 F.3d 658, 662 (7th Cir.1996). It wound up the suit, and the fact that it was a complex equitable decree rather than a simple money judgment, and that it was entered by consent, did not take it out of the class of final judgments. That makes the order extending the monitor a "postfinal" order, and it might seem that every postfinal order is itself final. But that is not the conclusion that the courts have reached in dealing with orders entered after the entry of the conventionally final judgment. As in the analogous case of adversary proceedings nested within an ongoing bankruptcy, *In re James Wilson Associates,* 965 F.2d 160, 166 (7th Cir.1992), we try to treat the postjudgment proceeding as if it were a free-standing lawsuit, e.g., *In re Joint Eastern & Southern Districts Asbestos Litigation,* 22 F.3d 755, 760 (7th Cir. 1994); *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1224–25 (7th Cir.1993); *King v. Ionization International, Inc.,* 825 F.2d 1180, 1184–85 (7th Cir.1987), and to identify the final decision in the postjudgment proceeding and confine any further appeal under section 1291 to that decision. *Motorola, Inc. v. Computer Displays International, Inc.,* 739 F.2d 1149, 1154 (7th Cir.1984).

The approach presupposes that the postjudgment proceeding is enough like a free-standing lawsuit to enable a plausible counterpart to the conventional final judgment to be picked out. The presupposition fails when the decree is dealing with a consent decree

that, like the one involved in this case, has no termination date. The postjudgment proceeding could drag on for many years and involve a host of far-reaching orders the consequences of which could not be undone when (if ever) the postjudgment proceeding ended with a showing of compliance so complete that the monitor's services could be dispensed with. Some courts therefore prefer to evaluate orders in postjudgment proceedings in institutional reform litigation under the concept of "pragmatic finality." *Stone v. City & County of San Francisco, supra,* 968 F.2d at 855; *United States v. International Brotherhood of Teamsters,* 931 F.2d 177, 182–83 (2d Cir.1991); *Walker v. HUD,* 912 F.2d 819, 825 (5th Cir.1990); *United States v. Western Electric Co.,* 777 F.2d 23, 26–28 (D.C.Cir.1985); see generally *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152–54, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3913 (2d ed.1992). That does not strike us as a satisfactory resolution. The concept is formless (it is not even named or described in the *Teamsters* and *Walker* cases), and there are other, clearer ways to address the concern that lies behind it. That concern is with orders that have irrevocable consequences. The orthodox, and as it seems to us the adequate, routes for obtaining immediate appellate review of orders that cause irreparable harm are mandamus (see 28 U.S.C. § 1651; *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 383–85, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (concurring opinion); *In re Sandahl,* 980 F.2d 1118 (7th Cir.1992)), and 28 U.S.C. § 1292(a)(1), which authorizes the appeal of nonfinal orders granting, modifying, denying, refusing, continuing, dissolving, or refusing to modify or dissolve injunctions.

Mandamus won't lie here because the "error," if that is what it was, in extending the monitor was not so egregious as to warrant immediate appellate intervention. E.g., *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988); *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1295 (7th Cir.1995). And the order extending the monitor's term was not the *grant* of an injunction. *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 291 n. 4, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *People Who Care v. Rockford Board of Education, supra,* 111 F.3d at 540–41. The appointment of a special master or court-appointed expert witness or other court adjunct, such as a monitor, although it is an order to do rather than an order to pay, is deemed a procedural order, and procedural orders, though they often have the form of an injunction, are not classified as injunctions for purposes of section 1292(a)(1). E.g., *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377–78, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); *United States v. Nixon,* 418 U.S. 683, 690–91, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *People Who Care v. Rockford Board of Education, supra,* 111 F.3d at 540–41. (Otherwise the courts of appeals would be flooded with interlocutory injunctions.) By the same token, the extension of the monitor, while it "continued" him in office, since without an order his term would have expired automatically (*Ricci v. Okin,* 978 F.2d 764, 765 (1st Cir.1992)), did not "continue" the injunction because the appointment of the monitor was not itself an injunction, although it was a provision in an equitable decree. So the extension is not appealable under the part of section 1292(a)(1) relating to orders continuing injunctions.

We are mindful that most procedural orders, including those relating to masters and other judicial adjuncts, are entered before final judgment, and so in principle anyway are reviewable, albeit not immediately, when that judgment is entered. And as we said earlier, while some postjudgment proceedings have a natural terminus, a proceeding to enforce a consent decree does not. But to allow all procedural rulings in proceedings to enforce consent decrees to be immediately appealable would threaten an avalanche of interlocutory appeals, since such proceedings are frequently, as here, complex and protracted. To have to pick and choose among them on the basis of the nebulous concept of "pragmatic finality" would add a further level of complication and by its very indefiniteness incite appeals.

■ The defendants cannot obtain review under the provision of section 1292(a)(1) that authorizes an immediate appeal from an order *modifying* an injunction. The provision of the consent decree which states that "the monitor's activities shall be terminated on June 30, 1997 unless extended by order of this court" could conceivably be read as merely an acknowledgement of the judge's power to modify the decree by extending the monitor's term, but it would not be a plausible reading. It would make the words "unless extended by order of this court" surplusage, since judicial power to modify a decree is inherent and so does not require express conferral. Moreover, the decree contains an article specifying procedures for modification (Article XI), but the order appealed from here was not made on the authority of or in conformity with those procedures; the provision concerning extension appears in a different article. And the natural reading of the quoted language is not that it authorizes the modification of the decree but that it reserves a power to the court, as in *County of Suffolk v. Stone & Webster Engineering Corp.,* 106 F.3d 1112 (2d Cir.1997); see also *Ricci v. Okin, supra; Sanders v. Shell Oil Co.,* 678 F.2d 614 (5th Cir.1982). The parties agreed in the consent decree that the judge could extend the monitor's term. By thus agreeing, they made it unnecessary for the plaintiffs to ask the judge to modify the decree in order to extend the monitor. Suppose the termination provision had read simply, "the monitor's activities shall be terminated on June 30, 1997." Then if the plaintiffs had wanted him extended they would have had to move under Article XI for a modification. The "unless" proviso saved them that bother. Had the defendants wanted to limit the judge's power, they could have insisted on appropriate language.

Finally, had the parties contemplated a possible appeal from an order exercising the reserved power, they would have established criteria for that exercise. They would have said something like "unless *for good cause shown* the court extends the monitor." This would have made clear that the court was not to exercise its discretion at large and would thus have given an appellate court a basis for reviewing the district court's action. As it reads, the "unless" provision does not specify any law to apply to a motion to extend, and so, by analogy to administrative law, there is no basis for appellate second-guessing. 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil,* 508 U.S. 182, 190–92, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993); *Webster v. Doe,* 486 U.S. 592, 599–600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Lalani v. Perryman,* 105 F.3d 334, 337–38 (7th Cir.1997) (per curiam).

It is only an analogy. Judges do not have the same leeway as other government officials to exercise power randomly or without articulable reasons. The exercise of prosecutorial discretion and the grant of citizenship on the basis of a lottery illustrate the type of discretion that judges do *not* have except in matters of scheduling and personnel, matters of a managerial rather than an adjudicative character. Although the extension of the monitor partook of both types of judicial action, we would not read the consent decree to permit the extension of the monitor's term without a modification of the decree if the result would be to place the district court's action, which has potentially significant consequences for the cost and burdens of the consent decree on the state, beyond *any* possibility of appellate review. In other words, we do not read the provision as a waiver of the right to seek appellate review, though we do read it as placing the judge's action outside the boundaries of section 1292(a)(1). If the judge had a fit and extended the monitor's term to the year 3000, mandamus would be available to rein him in. *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *In re Pearson,* 990 F.2d 653, 656 (1st Cir.1993); *National Organization for the Reform of Marijuana Laws v. Mullen,* 828 F.2d 536, 541 (9th Cir.1987). But well short of that extreme, both the plaintiffs and the defendants do have an appellate remedy—only not the one invoked by the defendants—in case the judge errs either in denying or (as he did) granting an extension of the monitor's term.

In the former case, the plaintiffs could move to modify the decree to extend the term; the denial of a motion to modify an injunction is, as we noted, expressly appeal-

able under section 1292(a)(1). *Ford v. Neese,* 119 F.3d 560, 562 (7th Cir.1997). More to the point, given that the judge granted the extension, the defendants, who opposed it on the ground that they are in compliance with the decree, have only to move to dissolve the decree and, again, the denial of that motion will be appealable under section 1292(a)(1). If the state could demonstrate that it had achieved compliance with the decree, its motion to dissolve the decree would probably be granted, given the policy to which we referred just the other day of terminating institutional reform litigation at the earliest opportunity and returning state functions to state control. *People Who Care v. Rockford Board of Education,* 153 F.3d 834 (7th Cir.) (per curiam); see also *Missouri v. Jenkins,* 515 U.S. 70, 99, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995); *Board of Education v. Dowell,* 498 U.S. 237, 248, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991); *United States v. Board of School Commissioners, supra,* 128 F.3d at 510. But as there is no basis for jurisdiction over the present appeal, the appeal is

DISMISSED.