280 F.3d 1289
 BIRMINGHAM FIRE FIGHTERS ASSOCIATION 117, et al., Plaintiffs,
Wilks Class, Plaintiff-Appellant,
v.
JEFFERSON COUNTY, Ben L. Erdreich, Thomas W. Gloor, Chriss H. Doss, Jefferson County Personnel Board, et al., Defendants-Appellees.
 No. 01-14262.
 United States Court of Appeals, Eleventh Circuit.
 January 7, 2002.
 
 Gary L. Brown, Raymond P. Fitzpatrick, Jr., Fitzpatrick, Cooper & Clark, LLP, Birmingham, AL, for Plaintiff-Appellant.
 Albert L. Jordan, Wallace Jordan, Ratliff & Brandt, L.L.C., Birmingham, AL, for Jefferson County.
 Anne R. Yuengert, Scott B. Smith, Bradley, Arant, Rose & White, Shirley I. McCarty, Birmingham, AL, Andrea M. Picciotti-Bayer, U.S. Dept. of Justice, Washington, DC, for Defendants-Appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before ANDERSON, Chief Judge, and DUBINA and CARNES, Circuit Judges.
 CARNES, Circuit Judge:
 
 
 1
 This appeal is the latest round in the protracted litigation over the procedures used by the Jefferson County Personnel Board and the City of Birmingham to hire and promote City employees — litigation that would have recently celebrated its 25th birthday, if such a thing were cause for celebration.
 
 
 2
 The original suit was brought by black plaintiffs who claimed that the City's hiring practices discriminated against them. In 1981, the district court entered two consent decrees, one between the City and the original plaintiffs ("City consent decree"), and the other between the Board and the original plaintiffs. Then the Wilks class, a class of all present and future male, nonblack city employees, attempted to collaterally challenge the consent decrees on the ground that they unlawfully discriminated on the basis of race in favor of blacks. Ultimately, the Supreme Court decided that the Wilks class was entitled to bring its collateral challenge. Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). After that decision, the Wilks class was allowed to intervene in the underlying litigation, and the consent decrees were modified.
 
 
 3
 In 1995, the decrees were modified again pursuant to instructions given by this Court in Ensley Branch, N.A.A.C.P. v. Seibels, 31 F.3d 1548, 1552, 1583-84 (11th Cir.1994). According to our instructions, the City consent decree was modified to require the City to remove all race- and gender-conscious selection procedures from its employment policies. Ensley Branch, N.A.A.C.P. v. Seibels, Nos. 74-Z-12-S, 74-Z-17-S, 75-P-0666-S (N.D.Ala. Dec. 20, 1995) ("1995 Order Modifying Consent Decree"). After the remand in Ensley Branch, the parties clarified their differences, narrowing to fourteen the number of positions that some or all parties contended were being filled by selection procedures that had an adverse impact.[1] The City decree was modified yet again in December 2000 to direct the City to provide data as to the impact of its selection procedures upon hiring for those jobs.[2] Ensley Branch, N.A.A.C.P. v. Seibels, Nos. CV-74-12-S, CV-74-S-17-S, CV-75-S-666-S (N.D.Ala. Dec. 18, 2000) ("2000 Order Modifying Consent Decree"). At that same time, it was extended until June 2002. Id.
 
 
 4
 The City and the Wilks class each had experts analyze the data provided pursuant to the December 2000 modification of the consent decree. When the dust had settled, both sides agreed that the selection procedures for the position of Fire Lieutenant do not have an adverse impact. They disagreed, however, as to whether the procedures for seven of the other positions have an adverse impact — the Wilks class said they do, while the City said they do not.[3] The City then asked the district court to determine whether the City's selection procedures for the disputed positions have an adverse impact on race and gender. The City contended that the Wilks class could not show adverse impact,[4] while the Wilks class contended it did not have to show adverse impact because the 1995 Order Modifying Consent Decree put on the City the burden of showing the absence of adverse impact. To support its contention, the Wilks class relied on paragraph 8 of the 1995 Order Modifying Consent Decree, which states:
 
 
 5
 It shall be the City's responsibility to ensure that each selection procedure required or used by the City shall either: (1) have no adverse impact on the basis of race or sex as defined by the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607 et seq. (1994), (hereinafter "the Uniform Guidelines"); or (2) be job related for the job classification(s) in question and consistent with business necessity, in accordance with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Uniform Guidelines and other applicable Federal law.
 
 
 6
 Mem. Op. at 9 (quoting 1995 Order Modifying Consent Decree (footnote omitted)).
 
 
 7
 After a hearing, the district court determined that the Wilks class, as the complaining party, had the burden of persuasion on the issue of adverse impact, stating that "despite the wording of that particular paragraph or the interpretation assigned to it, statutory and judicial authorities relating to employment discrimination place the burden of persuasion squarely on the party complaining that a selection procedure has adverse impact, i.e., the Wilks class." Mem. Op. at 10. Further, the district court, having considered the expert opinions presented by both sides, found that the Wilks class had failed to meet its burden, and therefore it ruled that the City had satisfied the requirements of paragraph 8 of the 1995 Order Modifying Consent Decree as to six of the challenged job classifications and as to the challenged post-job screening procedures of another position.[5] Id. at 35-41.
 
 
 8
 The Wilks class has appealed that ruling. In response, the City has moved to dismiss the appeal, asserting that the district court order is an interlocutory decision that does not qualify for appeal under 28 U.S.C. § 1292(a)(1). Section 1292(a)(1) allows appeal from "[i]nterlocutory orders of the district courts of the United States... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...." The City argues that the district court's order merely interpreted paragraph 8 of the existing 1995 Order Modifying Consent Decree, and therefore that it does not fall within the purview of § 1292(a)(1). The Wilks class responds that the district court's interpretation of paragraph 8 runs so contrary to that paragraph's plain language that it actually constitutes a modification of the decree, and thus it is the proper subject of an interlocutory appeal under the statute.
 
 
 9
 In order to decide whether the district court's order is ripe for appeal under § 1292(a)(1), a reviewing court must first examine "whether there [is] an underlying decree of an injunctive character," and then decide whether the ruling appealed from has "changed the underlying decree in a jurisdictionally significant way." Sierra Club v. Marsh, 907 F.2d 210, 212 (1st Cir.1990). In this case, there is no dispute that there is an underlying decree of an injunctive character — the 1995 Order Modifying Consent Decree is that. The question is whether the order now being appealed by the Wilks class — the 2000 Order Modifying Consent Decree — has altered the decree in a jurisdictionally significant way.
 
 
 10
 Of course, we are not governed by the district court's own characterization of the order as an "interpretation" or "clarification," as distinguished from a "modification." See Gautreaux v. Chicago Hous. Auth., 178 F.3d 951, 956-57 (7th Cir.1999) ("This court has repeatedly held that it will look beyond labels such as `clarification' or `modification' to consider the actual effect of the order."). Instead, we make our own determination, and in doing so we take a "functional approach, looking not to the form of the district court's order but to its actual effect." Marsh, 907 F.2d at 213. Functionally, an order modifies the original decree when it actually changes the legal relationship of the parties to the decree. Gautreaux, 178 F.3d at 957. Our underlying task, then, is to decide whether the order has changed the legal relationship of the parties. Their legal relationship does not change merely because the district court finds that one party has satisfied some of the pre-existing requirements of the decree; instead, to effect a change in the legal relationship of the parties, the order must "change the command of the earlier injunction, relax its prohibitions, or release any respondent from its grip." Marsh, 907 F.2d at 213.
 
 
 11
 In attempting to discern interpretation from modification, however, we should not analyze the injunction and the order in detail. To plunge into the details would collapse the jurisdictional inquiry into a decision on the merits, thwarting the purpose of § 1292(a)(1). The statute is deliberately careful in limiting the availability of interlocutory review of orders concerning injunctions. And with good reason. The Supreme Court, this Court, and our sister circuits all have warned of the dangers of piecemeal appeals and have emphasized that, to guard against this danger, § 1292(a)(1) must be construed narrowly so as to limit the availability of interlocutory appeals in cases involving injunctions. See Switzerland Cheese Ass'n v. E. Horne's Market, Inc., 385 U.S. 23, 24, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) ("[W]e approach this statute somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders."); United States v. City of Hialeah, 140 F.3d 968, 973 (11th Cir.1998) ("Congress did not intend for the injunction exception to open the floodgates to piecemeal appeals."); Marsh, 907 F.2d at 214 (allowing "an interlocutory appeal at every succeeding step after an injunction had been granted" would be "opening Pandora's jar"). If we were to answer the jurisdictional question — whether the district court's order "modified" the original injunction — by analyzing in detail the language of the injunction and how it is affected by the order, we would be letting piecemeal appeals, cloaked in the guise of jurisdictional inquiries, come in through the back door.
 
 
 12
 Therefore, in deciding whether the district court's order has modified the injunction, our inquiry is circumscribed. We ask not whether the district court's reading of the consent decree is in error, but whether it is a gross misinterpretation of the decree's original command. In adopting this standard in order to constrain our inquiry, we follow the lead of the Seventh Circuit, as set out in Bogard v. Wright, 159 F.3d 1060 (7th Cir.1998), and Gautreaux, 178 F.3d 951. As that circuit explained, "an analysis [that] aim[s] to uncover subtle rather than blatant misinterpretations ... is ... too searching for a preliminary jurisdictional inquiry." Id. at 958. Limiting our inquiry to a search for only blatant misinterpretations "blocks the statute's `modification' provision from serving as a back door to appellate review of every administrative clarification the district court makes, while it simultaneously retains this court's authority to look behind labels when those labels obviously mischaracterize the order." Id. at 957. We agree with that approach and accordingly hold that a district court's interpretation of an injunction modifies it for interlocutory appellate jurisdiction purposes only when that interpretation is blatantly or obviously wrong. To clear the jurisdictional hurdle, the misinterpretation must be such that it leaps from the page.
 
 
 13
 Applying the test to the case at hand, it is evident that the order the Wilks class seeks to appeal did not "modify" the injunction, and thus we have no jurisdiction under § 1292(a)(1) to hear this interlocutory appeal. The Wilks class argues that paragraph 8, with its statement that "[i]t shall be the City's responsibility to ensure" its selection procedures do not have an adverse impact, places on the City the evidentiary burden of showing the absence of adverse impact. That reading of paragraph 8 may be correct; it is certainly plausible. But the district court's different reading of that paragraph is plausible as well, and certainly not so implausible as to amount to a blatant misinterpretation of the consent decree. That the decree requires the City to shoulder the responsibility of ensuring its procedures are fair does not necessarily mean that, when the Wilks class claims that responsibility has not been carried out, the City must prove that it has. As the district court pointed out, the general rule in discrimination cases is that the party challenging a procedure or practice has the burden of showing adverse impact. Paragraph 8 of the consent decree conceivably may have shifted that burden, but it does not unmistakably express an intention to do so. The error in the district court's interpretation, if any, does not leap from the page.
 
 
 14
 It is important to stress that we are not holding that the Wilks class's interpretation of paragraph 8 is incorrect. The district court's interpretation might be reversed if the issue were before us on appeal from a final judgment, but it is not. What we hold, and all that we hold, is that the district court's interpretation of the key language does not so blatantly misinterpret the decree as to "modify" it and thereby create interlocutory appellate jurisdiction under § 1292(a)(1). Compare Bogard, 159 F.3d at 1064-65 (7th Cir. 1999) (holding that an order extending the term of a monitor appointed pursuant to an injunction did not "modify" the original injunction), and Marsh, 907 F.2d at 212, 213 (holding that an injunction was not "modified" by a district court's order finding the party subject to the injunction had satisfied two of its three conditions); with United States v. Bd. of Sch. Comm'rs, 128 F.3d 507, 509 (7th Cir.1997) (holding that an order subjecting an entire class of previously unincluded students to the dictates of the underlying injunction is a modification, not an interpretation).
 
 
 15
 Finally, we find it worthwhile to note that this case epitomizes the wisdom of the policy animating the decisions that instruct us to narrowly construe § 1292(a)(1). There are twelve positions covered by the injunction, meaning that there is the potential for twelve separate interlocutory appeals — one each time the district court finds, with respect to a given position, that the City has or has not complied with the requirements of paragraph 8 of the decree.[6] Allowing an interlocutory appeal every time the district court approves selection procedures for a position would invite inefficiency, redundancy, and delay. The prospect of further delay is especially undesirable in a case already older than the average college student.
 
 
 16
 The district court order did not blatantly misinterpret the 1995 consent decree. Therefore, we have no jurisdiction under 28 U.S.C. § 1292(a)(1) to review the order at this time. Accordingly, the appeal is dismissed for lack of jurisdiction.
 
 
 17
 DISMISSED.
 
 
 
 Notes:
 
 
 [1]
 Two of those positions, Labor Supervisor and Zoo Keeper, have been eliminated in the interim and are therefore no longer subjects of the litigation
 
 
 [2]
 On May 20, 1998, the Police Captain classification became subject to a different schedule, and it is therefore no longer at issue in this litigation
 
 
 [3]
 They disagreed as to whether the selection procedures for six positions — Fire Apparatus Operator, Fire Captain, Fire Battalion Chief, Engineering Aide, Gardener, and Heavy Equipment Operator — have an adverse impact based on race, and as to whether the procedures for one of those — Heavy Equipment Operator — have an adverse impact based on gender. They also disagreed about whether the post-job task screening process for one other position, Firefighter, has an adverse impact on race and gender
 
 
 [4]
 The City was joined in this position by the other parties in the litigation: the United States, the Martin (original) plaintiffs, and the Bryant intervenors
 
 
 [5]
 The court found the City had satisfied the requirements of paragraph 8 as to the six positions — Fire Apparatus Operator, Fire Captain, Fire Battalion Chief, Engineering Aide, Gardener, and Heavy Equipment Operator — and in addition found the City had satisfied those requirements as to the post-job screening portion of its selection procedures for the position of FirefighterId. at 40-41.
 
 
 [6]
 The Fire Lieutenant position has already been vetted by both parties, and in the challenged order the procedures for six other positions, and part of the procedures for one more, have been cleared by the district court, so only the procedures for four positions and part of the procedures for one more are left to be cleared. If the district court separately approves pre- and post-job selection procedures for each position, then two interlocutory appeals for every position would be possible. Additionally, there is the possibility that the procedures for each position might separately be cleared for adverse gender impact and adverse racial impact, meaning that four interlocutory appeals might arise out of the process of approving the procedures for one position. Four appeals for each of the four remaining uncleared positions, plus two for the pre-job selection procedures not yet cleared for the position of Firefighter, would mean 18 interlocutory appeals in addition to the one we are considering today