**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**BOARD OF SCHOOL COMMISSIONERS**
**OF THE CITY OF INDIANAPOLIS,**
**et al., Defendants–Appellants.**

No. 97–1530.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1997.

Decided Oct. 14, 1997.

508

Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN, Dennis J. Dimsey, Gregory B. Friel (argued), Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, for United States of America.

John O. Moss (argued), Moss & Associates, John P. Ward, Indianapolis, IN, Charles D. Kelso, Sacramento, CA, for Donny Brurell Buckley and Alicia Marquese Buckley.

Patricia A. Brannan (argued), Maree Sneed, Hogan & Hartson, Washington, DC, B. Keith Shake, Eugene L. Henderson, Henderson, Daily, Withrow & Devoe, Indianapolis, IN, for Board of School Commissioners of the City of Indianapolis, Indiana and Esperanza Zendejas.

Robert E. Cambridge (argued), Bloomington, IN, for Metropolitan School District of Decatur Township, Marion County, Indiana.

John A. Kitley, Jr., Beech Grove, IN, for Franklin Township Community School Corporation, Marion County, Indiana.

David R. Day (argued), Johnson, Smith, Pence, Densborn, Wright & Heath, Indianapolis, IN, for Metropolitan School District of Lawrence Township, Marion County, Indiana.

Louis H. Borgmann, Jackson & Borgmann, Inidanapolis, IN, for Metropolitan School District of Perry Township, Marion County, Indiana.

David R. Day, Johnson, Smith, Pence, Densborn, Wright & Heath, Indianapolis, IN, for Metropolitan School District of Warren Township, Marion County, Indiana.

George T. Patton, Jr., Jon M. Bailey, Bose, McKinney & Evans, Indianapolis, IN, for Metropolitan School District of Wayne Township, Marion County, Indiana.

Before POSNER, Chief Judge, and CUMMINGS and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Almost two decades ago, the federal district court in Indianapolis issued an injunction requiring the busing of public schoolchildren living in certain parts of the city that were primarily black to public schools located in primarily white suburban areas of Marion County. 506 F.Supp. 657, 676–77 (S.D.Ind. 1979), aff'd in relevant part, 637 F.2d 1101, 1112–15 (7th Cir.1980). (Indianapolis is now coterminous with Marion County, but the Indianapolis Public School District, where the children in question live, is limited to the original city and thus excludes the county's suburban areas.) Earlier this year, the Indianapolis Board of School Commissioners, the ruling body of the Indianapolis Public School District (IPS, as the parties call it), asked the district judge to lift the injunction. He refused, and in passing ordered all kindergarten students in the designated sections of the city to be bused too, rescinding an earlier order that had permitted, at parental option, the busing of kindergartners from some but not all of the parts of the inner city covered by the injunction. The board has appealed.

■ There is no question that in adding compulsory busing of kindergarten students to the original injunction, the district judge modified that injunction, and an order modifying an injunction is appealable without regard to finality. 28 U.S.C. § 1292(a)(1). But there is a question whether the part of his order that continues the underlying injunction in force is similarly appealable.

The board moved to lift the injunction and dismiss the suit (now in its thirtieth year) on the ground that the Indianapolis Public School District has achieved what in the euphemistic lexicon of school segregation cases is called "unitary status," which means that the district is not (or, as here, is no longer) discriminating. The district court declined to address this issue, saying that it was "not fully advised as to whether IPS should be declared 'unitary' in whole or in part, and [the court] will therefore take additional evidence on this issue at a further hearing to be scheduled in the near future." The hearing has not yet been held, or, so far as we know, even scheduled.

■ Standing alone, the language that we have just quoted would signify that the court was not ruling on the board's request to lift the injunction because the request depended on a factual determination that would require further proceedings. Postponement of a ruling on a request to dissolve an injunction is not treated as a denial for purposes of appealability—otherwise the movant could appeal before the judge had had a chance to consider his motion—unless it is so protracted that it has the practical effect of a denial; in that event it is deemed a constructive denial, and immediate appeal is allowed. *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 526–27 (7th Cir.1996); *Middleby Corp. v. Hussmann Corp.*, 962 F.2d 614 (7th Cir.1992); *Kelley v. Metropolitan County Board of Education*, 436 F.2d 856, 862 (6th Cir.1970). But when context is restored, it is apparent that the district judge was not making a procedural ruling. He went out of his way to make clear that however the issue of "unitary status" was resolved, the injunction would remain in effect—would, as he put it, be "permanent." The reason he gave was

that the injunction is an "interdistrict" rather than an "intradistrict" remedy.

■ Judges may not issue busing orders ("transfer orders," in another bit of school segregation litigation jargon) that send the kids outside the boundaries of the public school district in which they live, if the only violation of the equal protection clause is by that school district. *Missouri v. Jenkins*, 515 U.S. 70, 89–93, 115 S.Ct. 2038, 2049–52, 132 L.Ed.2d 63 (1995); *Milliken v. Bradley*, 418 U.S. 717, 744–45, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974); *United States v. Mississippi*, 921 F.2d 604, 607 (5th Cir.1991). If New York City discriminates against black schoolchildren, a federal district court cannot order the children bused to Scarsdale. If, however, the discrimination crosses district lines—for example, if New York State had a law forbidding black people to live in Scarsdale—then an "interdistrict" remedy would be appropriate. E.g., *Milliken v. Bradley, supra*, 418 U.S. at 745, 94 S.Ct. at 3127. The busing order at issue in this case is interdistrict. Although the inner-city children are being bused to schools that are also within the city boundaries, they live in a different school district, the IPS. The order is based on two acts of cross-district discrimination. The first is that in 1969, when by a law known as "Uni–Gov" the Indiana legislature extended the boundaries of the City of Indianapolis to make them coterminous with those of Marion County, the boundaries of IPS were deliberately not extended, in order to prevent black public schoolchildren from being in the same school district as white ones. Second, the Housing Authority of the City of Indianapolis, which as a result of Uni–Gov became responsible for public housing throughout Marion County, refused to build outside of IPS, so that black children living in public housing would not reside in any of the suburban school districts and attend school there. The interdistrict busing order was designed to remedy these alleged acts of interdistrict discrimination.

There is, as a result, an element of non sequitur in the school board's request for the dissolution of the interdistrict busing order on the ground that IPS is no longer engaged in racial discrimination. IPS was found to

have engaged in racial discrimination and was placed under orders designed to remedy that discrimination; but the interdistrict order is based upon, and seeks to remedy, acts of other public entities altogether.

The non sequitur weakens (though, as we are about to see, it does not destroy) IPS's case on the merits, but at least shows that we have jurisdiction over the appeal without our having to invoke the controversial and embattled doctrine of pendent appellate jurisdiction, on which see *Swint v. Chambers County Comm'n*, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); *IDS Life Ins. Co. v. SunAmerica, Inc., supra*, 103 F.3d at 528; *In re Rimsat, Ltd.*, 98 F.3d 956, 964 (7th Cir.1996). The postponed hearing on "unitary status" is, in the district judge's view, irrelevant to the continued validity of the interdistrict busing order. His refusal to dissolve that order is therefore not procedural, is not a mere postponement until he has a chance to take evidence on unitariness. As the ruling that IPS is trying to appeal is impervious to further evidence—as it definitively denies the relief that IPS seeks—IPS is entitled to appeal.

Coming to the merits, we begin by observing that if all that the board were arguing was that it is no longer discriminating, the appeal would border on the frivolous for the reason just indicated—the fundamental difference between interdistrict and intradistrict remedies in school segregation cases. But there is more. The board argues that after thirty years of litigation, and eighteen years of busing, it is time to put this suit on the path to a conclusion by taking a careful look to see whether the litigation and the decree have accomplished their purpose. It points out that the Supreme Court disfavors permanent injunctions in school cases. The administration of public schools is a state executive function rather than a federal judicial function, and so ought not to be subjected to the perpetual tutelage of the federal courts. The Court has said that "local autonomy of school districts is a vital national tradition," and that "a district court must strive to restore the state and local authorities to the control of a school system operating in compliance with the Constitution."

*Missouri v. Jenkins, supra*, 515 U.S. at 99, 115 S.Ct. at 2054; see also *Board of Education v. Dowell*, 498 U.S. 237, 248, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991).

█ The goal of winding up a district court's supervision of public education is not limited to intradistrict cases, that is, to cases involving discrimination by the school district itself. Such a limitation would be unprincipled, is disavowed by the United States (the principal appellee), is not supported by the case law or by anything in the equal protection clause, the principles of federalism, or the precepts of equitable jurisprudence, and was rejected in *Coalition to Save Our Children v. State Board of Education*, 90 F.3d 752, 759–61 (3d Cir.1996). The extent of appropriate federal judicial control over the Indianapolis Public School District is unrelated to the destination of the pupils that the court has ordered bused, unrelated, that is, to whether the destination is in the same district. The injunction that the school board wants lifted creates a strange mosaic of gerrymandered school districts, in which designated neighborhoods of the inner city are married to designated suburban schools, providing privileged educational opportunities to the ten percent of IPS's schoolchildren who live in those neighborhoods. The order may be a good order or a bad order, but it is an order that thrusts the federal district court deep into the administration of the public schools of Marion County. The presumption is therefore against its permanence, contrary to what the district judge said in his opinion.

█ This is not to say that the injunction should be dissolved tomorrow; no one wants that. To ensure that the injunction is not dissolved so suddenly as to disrupt the education of the children currently being bused, the board itself proposes to phase it out over a thirteen-year period: anyone already enrolled in a suburban school pursuant to the injunction would be permitted to remain until graduation from high school. Still, it wants to begin the process of phasing out immediately. Yet it can be permitted to do that only if it can present evidence that the busing order issued almost two decades ago has, in fact, outlived its usefulness. The viola-

tions by the state and by the housing authority are long in the past. But to the extent that their consequences linger, continued equitable relief may be appropriate. That is the teaching of cases such as *Missouri v. Jenkins, supra,* 515 U.S. at 89, 115 S.Ct. at 2049, and *Board of Education v. Dowell, supra,* 498 U.S. at 249–50, 111 S.Ct. at 638. But it is worth attending to the precise language in these cases: the "vestiges" of discrimination are to be eliminated by decree "to the extent practicable" and, we add, knowable. At some point the continuing and inelimininable traces of an earlier violation are too slight to justify continued federal judicial control of public education. It is a question of fact whether that point has been reached either in all or some of the public schools affected by the busing order. *Freeman v. Pitts,* 503 U.S. 467, 490–91, 112 S.Ct. 1430, 1445–46, 118 L.Ed.2d 108 (1992).

The district judge's ground for continuing the order in force is that, had it not been for those old violations, 7,000 more black schoolchildren would today live in the suburbs to which they are being bused and 7,000 fewer in the inner city. This is the sheerest speculation, implying an ability to trace the causality of social change over decades with a degree of precision that few social scientists would claim. The school board should be allowed to prove that the demography of Marion County today is, so far as anyone can determine, approximately what one would have expected even if there had not been the history of official discrimination for which the busing order is the remedy. E.g., *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 435–37, 96 S.Ct. 2697, 2704–05, 49 L.Ed.2d 599 (1976); *People Who Care v. Rockford Board of Education,* 111 F.3d 528, 534–35, 537 (7th Cir.1997). Without allowing the school board to offer such proof, the district court cannot rationally insist that the order is to remain in effect until the last trumpet.

Some of the appellees argue that the right to present such evidence lies not with the school board but with the state (and, in principle, the county housing authority—but not in practice, as we shall see), as they are the wrongdoers against whom the inter-district part of the decree is aimed. We cannot understand the sense of that argument. Of course in the normal case it is the wrongdoer and only the wrongdoer who would be expected to incur the cost of demonstrating that the injunction directed against him should be lifted. But we are in the cloudcuckooland of institutional reform litigation. The state and the housing authority are not hurting as a result of a decree that requires the busing of students from one part of Marion County to another (or rather not hurting much, because the state does pay the costs of busing, as a result of our decision in *United States v. Board of School Commissioners,* 677 F.2d 1185 (7th Cir.1982)). For this or other reasons these entities seem to have little incentive to prepare and present evidence. And the Indianapolis school board has no power to coerce them to do so. The housing authority may have no incentive at all to cooperate, since in a hearing in 1996 the district judge indicated that he didn't consider the housing authority, which he had long ago enjoined from building any more public housing within the boundaries of the IPS (see *United States v. Board of School Commissioners, supra,* 637 F.2d at 1117, affirming that injunction), to be a party to this litigation any longer. But that is a detail, the important point being that any person bound and significantly constrained by an equitable decree may present evidence to show that the decree should be lifted even if the primary wrongdoer is someone else. "A defendant may move to dissolve an injunction if it injuriously affects his interests, although the order is not against him," *In re Hendrix,* 986 F.2d 195, 197 (7th Cir.1993) (quoting *Hall v. Orlikowski Construction Co.,* 24 Ill. App.3d 60, 321 N.E.2d 23, 25 (1974)), as may a nonparty who is bound by the injunction. *Memorial Health Systems, Inc. v. Halifax Hospice, Inc.,* 689 So.2d 373 (Fla.App.1997). Any other rule would give more rights to an adjudicated wrongdoer than to an innocent person forced to bear many of the costs of the wrongdoing; we cannot see what sense that would make. There is no doubt that the constraints that the decree places on IPS's autonomy give it standing to challenge the decree.

This is not a case, moreover, in which one unit of state government (such as IPS) seeks to justify its inability to comply with the law or a federal judicial decree by reference to acts of another unit, such as the state legislature, that are tying its hands. *United States v. Board of Education,* 11 F.3d 668, 673–74 (7th Cir.1993). IPS claims in effect that no one is violating the law, that the consequences of former violations have been extirpated so far as it is within anyone's power to do so; it just doesn't want to be a hostage to the refusal of other units of Indiana government to incur the expense of proving their compliance. When we consider the Supreme Court's insistence that federal courts revest the control of formerly segregated public schools in the local authorities as soon as possible, we cannot see how IPS can reasonably be denied the opportunity to prove that the time has come for such revesting merely because of the indifference or obduracy of other public bodies over which it has no control.

■ It is even clearer that the part of the decree that subjects the kindergartners to compulsory busing must be vacated. No one asked the judge for this modification; there was no hearing on it. As a result, there is nothing in the judge's order, or in the record on which it is based, about the respective kindergarten programs, facilities, and capacities in the transferor and transferee areas or about the appropriateness of compelling the busing of such young children against their parents' wishes and whether they are to be in the same buses with much older children. It is true that two years ago the district judge modified the decree to allow the busing of kindergartners from some of the inner-city neighborhoods and that he based the modification in part on a finding that the suburban schools to which these children would be bused had made kindergarten an integral part of the elementary school program. But the present modification adds schools without any finding about their programs and rescinds the voluntary feature of the original modification without explanation.

In defense of the modification that they did not seek, the appellees point out that the district judge has learned a lot about public school education in Marion County in the thirty years that he has been presiding over this litigation. For all we know he has more years of experience with running a school system than all the members of the school board of IPS combined. But great knowledge is a temptation as well as a resource: a temptation to blur the separation of powers, to shift the balance between the federal courts and state and local government too far toward the courts, and to disregard procedural niceties, all in fulfillment of a confident sense of mission.

Although we are vacating the district court's order, we want to emphasize the limited scope of our decision. We do not hold that the busing order should be dissolved or that, if it is not dissolved, still it must not extend to kindergartners. Those are judgments to be made in the first instance by the district court—but upon proper findings made upon a record compiled in an evidentiary hearing.

VACATED AND REMANDED.