JOHN R. GIBSON, Circuit Judge.
The Jenkins class, representing the children of the Kansas City, Missouri School District in this school desegregation case, has appealed the district court’s order declaring the district unitary and dismissing the case with prejudice. The order followed a hearing set by the court to consider KCMSD’s amended motion for equitable relief from a ruling of the Missouri State Board of Education declaring that the accreditation of KCMSD would be withdrawn effective May 1, 2000. After the district court denied KCMSD’s motion, it proceeded sua sponte to a discussion of the unitary status of the district and declared the district to be unitary. A panel of this court reversed and remanded, Jenkins v. Missouri, 205 F.3d 361 (8th Cir.2000), and we granted KCMSD’s motion for rehearing en banc. After receiving additional filings from the parties and hearing argument, we reverse and remand.
We need not discuss in detail the long history of the Kansas City school desegregation litigation. After a finding of constitutional violations, years of effort to remedy them, and extended litigation and appeals which we need not catalog, the State of Missouri moved for a declaration of unitary status. On March 27, 1997, Judge Russell Clark, who had presided over the case since its filing, granted the motion in part, but denied it in part. See Jenkins v. Missouri, 959 F.Supp. 1151 (W.D.Mo.), aff'd, 122 F.3d 588 (8th Cir.1997) (Jenkins XIV). In particular, Judge Clark held that twenty-six percent of the achievement gap of ten normalized curve equivalents between KCMSD’s black and white students was a vestige of the constitutional violation, and he ordered KCMSD to take reasonable steps to eradicate that vestige within the next three years. Id. at 1157-65, 1179. At the same time, Judge Clark approved a settlement between KCMSD and the State, providing that the State would pay KCMSD $320 million over three years, and in return, would be dismissed from the litigation. Id. at 1180.
On January 28, 1999, the district judge who succeeded Judge Clark to supervision of the case entered an order declaring that the State had paid its obligation under the settlement and dismissing the State from the case. Order of January 28, 1999. The court said that the State must continue to comply with any obligations that it undertook during the course of the lawsuit that were not covered by the agreement and warned the State against taking any action that might prevent KCMSD from ultimately fulfilling its court-ordered remedial goals. Id. at 6. The court then pointed to Judge Clark’s order giving KCMSD three years to eliminate all the remaining vestiges of segregation; the court commented that fifteen months remained on this time line. Id. After considering the “lengthy and litigious process” likely to attend a renewed motion for unitary status, the court directed the parties to prepare for a unitary status hearing to begin on January 3,2000. Id.
When KCMSD had hired its new superintendent, Benjamin Demps, the district judge, at a hearing on July 19, 1999, told Mr. Demps that a unitary status hearing was set for January 3.
Counsel appeared before the court on August 24, 1999 for a scheduling conference, which the court stated was “to address ... preparing for a unitary status hearing in January,” and in particular, what evidence the parties anticipated presenting in the hearing. Counsel for the *723 class suggested delaying the hearing. He said that it would be difficult for KCMSD to make a case that everything practicable had been done, because there was a “pretty widely shared agreement that this is not the case.” Furthermore, some test data were not in, and others seemed to show the achievement gap had not been closed. Nor had KCMSD implemented the curriculum, professional development, and accountability plans designed to close the gap. Also, KCMSD had just hired a new superintendent. The class’s counsel suggested a hearing in the late summer of 2000.
The court then pointed to Judge Clark’s statement that gave the district three years to eliminate the vestiges of discrimination. The court stated he “believed the Supreme Court when they told me to get this school district returned to local control” and that both he and Judge Clark had given KCMSD three years to comply.
Counsel for the class pointed out that recently the monitoring had been less heavy-handed, and that the monitoring committee, which was commonly referred to as the DMC, had been sending things back to the new superintendent to handle. Counsel said there were many ways the committee could lighten its monitoring. Counsel for the class stated that he did not anticipate that he would be presenting new approaches or anything other than implementation of the five programs already planned for reducing the black-white achievement gap: the curriculum, classroom practices, professional development, assessment, and accountability plans.
The district court then stated that he sensed that both the class and KCMSD were “pretty satisfied that the school district can’t ... go forward with the burden of proof that the gap has narrowed.”[1] He said he would need to have a hearing to take testimony from one of the experts who testified at the earlier unitariness hearing and also to hear whether the district was “on track” in implementing the five programs. The court commented that the problem had been the delay in implementation of the five plans to reduce the achievement gap. The court further commented that the track record of the district had not convinced him that KCMSD was putting heart and soul behind implementing the five plans or that KCMSD could get out of the political mode and get into looking after the best interests of the children.
Following this conference, the court filed a written order formally denying the motion for a continuance, stating:
[T]he Court provided for termination of the [DMC] by March 25, 2000. See Order at 21, Doc. #4575 (August 21, 1997), .... [E]ven if the KCMSD has not attained unitary status, all three Monitors would be removed. See id. At that time, the Court would need to determine the need for new Monitors or even a new remedial structure. Such a determination cannot be made without evidence of the KCMSD’s current status.
... The [unitary status] hearing will begin, as scheduled, on January 3, 2000. Order of August 26,1999 at 17-18 (emphasis added).
On October 21, 1999, the State Board of Education voted to withdraw accreditation of KCMSD as of May 1, 2000. In response, KCMSD filed an amended motion for equitable relief on October 25, 1999, seeking to bar the State’s action on the ground that it would interfere with the remedial decree in Jenkins.[2] That same *724 day, the court issued an order setting KCMSD’s motion for hearing on November 1 to hear evidence on three enumerated issues: whether the court should (1) rejoin the State as a party; (2) declare void ab initio the action of the Missouri State Board of Education in classifying KCMSD as an unaccredited school district; and (3) enjoin the application to KCMSD of several statutes on which the State Board’s action was based.
The court held the hearing on KCMSD’s motion on November 1-2, 1999. We need not discuss in detail the testimony before the court, except to state that it was directed to the issues outlined by the district court in its order of October 25. The parties agreed in oral argument before the panel that the hearing was not a unitary status hearing. At the conclusion of the proceedings of November 2, the court asked KCMSD’s staff counsel whether the KCMSD board agreed there should be a unitary status hearing in January. Counsel stated that the board voted unanimously to seek a continuance and authorized her to agree to a continuation of the monitoring committee in its current configuration until the end of the 1999-2000 academic year in June.
On November 9, 1999, KCMSD filed a written motion requesting a continuance of the unitary status hearing set for January 3, 2000, and consenting to continued supervision by the DMC. KCMSD further suggested that it would be appropriate to extend the term limits of the DMC beyond March 25, 2000, and to set a hearing at the end of the academic school year, June 3, 2000, to assess the role of the DMC and consider a reduction in the scope of the oversight by that body in the future.
On November 17 the district court issued an order denying KCMSD’s request to rejoin the State as a party and refusing to declare void ab initio The action of the State Board of Education classifying KCMSD as an unaccredited school district.[3] After ruling on the motion before it, the court proceeded sua sponte to consider the issue of whether the district was unitary. In light of the nature of our ruling, it is not necessary that we set out in detail the substance of the court’s reasoning. Suffice it to say that, much to the parties’ surprise, the court ended by declaring that the KCMSD had achieved unitary status. The court dismissed the case with prejudice.
I.
The issue before us is whether the district court erred in determining KCMSD to be unitary and dismissing the case without taking evidence or hearing arguments.
In January 1999 the court scheduled a hearing on unitary status for January 2000, and both in a conference with counsel and a written order in August 1999 commented specifically on the necessity for a hearing to evaluate what continuing judicial involvement would be required. The order setting the November 1-2, 1999 hearing limited that hearing to the issues of whether the State should be rejoined as a party and whether the de-accreditation order should be declared void ab initio. The transcript discloses that the testimony and evidence at the hearing were directed to these issues. The court’s inquiry at the conclusion of the November 1-2 hearing as to whether there should be a unitary status hearing in January demonstrates that the court did not consider it had conducted such a hearing. KCMSD’s counsel’s response to this inquiry by the court and its written motion filed November 9, 1999 for a continuance of the unitariness hearing demonstrate that KCMSD did not consider *725 that there had been a hearing on unitary status.
It is evident from what we have said above that KCMSD did nothing to contest the Jenkins class’s statements that KCMSD was not ready to move forward and establish that KCMSD was unitary, and the judge acknowledged as much. From this and from the court’s order limiting the proof at the November 1-2 hearing, the Jenkins class as well as KCMSD went into the hearing with no expectation that unitary status was an issue to be tried.
In Jenkins XTV we held, based upon abundant Supreme Court authority, that once there has been a finding that a defendant established an unlawful dual school system in the past, there is a presumption that current disparities of the sort listed in Green v. County School Board, 391 U.S. 430, 435, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), are the result of the defendant’s unconstitutional conduct. See Jenkins XIV, 122 F.3d at 593. Therefore, the burden of proving unitariness rests on the constitutional violator. Id. at 593-95. Our statement in Jenkins XIV found support in Freeman v. Pitts, 503 U.S. 467, 494, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992), where the Supreme Court stated-with respect to racial imbalance in student attendance caused by the unlawful policy of a school system, “The School District bears the burden of showing that any current imbalance is not traceable, in a proximate way, to the prior violation.” Other statements in Freeman similarly recognized that the burden was on the district to demonstrate a good faith commitment to compliance with the desegregation plan. Id. at 498-99, 112 S.Ct. 1430. This presumption places the burden in any hearing on unitary status on KCMSD, including the issue of reduction in student achievement and the achievement gap. KCMSD admittedly made no attempt to demonstrate that unitary status had been achieved.[4]
This court stated in Booker v. Special School District No. 1, 585 F.2d 347, 352 (8th Cir.1978), “There is no question that in a proper case a federal district court that has issued an injunction may vacate it or modify it if it is established that to continue it in force or without modification would work an inequitable result .” (emphasis added.)
In United States v. Board of School Commissioners, 128 F.3d 507 (7th Cir.1997), the Seventh Circuit faced a situation nearly identical to the one before us today. There, the Board of School Commissioners of the Indianapolis Public School District requested that the judge lift an injunction requiring busing of public school students on the ground that the district had achieved unitary status.[5] The district court declined to address the issue of unitary status, but modified its existing order by extending the busing to kindergartners, an issue that had not been raised by the *726 parties. The Seventh Circuit, in an opinion by Chief Judge Posner, stated:
No one asked the judge for this modification; there was no hearing on it. As a result, there is nothing in the judge’s order, or in the record on which it is based, about the respective kindergarten programs, facilities, and capacities in the transferor and transferee areas or about the appropriateness of compelling the busing of such young children against their parents’ wishes and whether they are to be in the same buses with much older children.
128 F.3d at 512. In support of the court’s order that they, like KCMSD here, did not seek in the first place, the appellees pointed out that the district judge had “learned a lot about public school education in Marion County in the thirty years that he has been presiding over this litigation.” Id. The Seventh Circuit responded:
[Gjreat knowledge is a temptation as well as a resource: a temptation to blur the separation of powers, to shift the balance between the federal courts and state and local government too far toward the courts, and to disregard procedural niceties, all in fulfillment of a confident sense of mission.

Id.

Although the Seventh Circuit was dealing with expansion of a remedy and we deal with the elimination of one, the principle is the same: procedural niceties equate with due process and must be afforded the parties. As the Seventh Circuit vacated the sua sponte order and remanded for the district court to hold an evidentiary hearing, so should we.
The parties are entitled to notice and an opportunity to prepare for a unitary status hearing. KCMSD would carry the burden of proof at such a hearing, and the Jenkins class would be entitled to an opportunity to respond. Due process of law requires no less. The sua sponte ruling of the district court, in spite of its several earlier orders setting the unitary status hearing some two months later, deprived the Jenkins Class of this constitutional guarantee.
Counsel for KCMSD conceded that the court’s ruling was on a ground not argued by the parties, but insisted that the court was thinking ahead of KCMSD. Having achieved its unexpected release from litigation, KCMSD hastens to give support to the ruling.
KCMSD argues that the district court did not err in declaring KCMSD unitary without benefit of notice, hearing, argument, or other evidentiary presentation. KCMSD cites Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), for the principle that “Parties are not always entitled to a hearing.” Link has little, if any, relevance to this case. In Link, the district court set a pretrial conference and notified counsel. When the lawyer for the plaintiff did not appear at the time set, the court dismissed the action for failure to appear and failure to prosecute. Id. at 629. Link did no more than rule that the dismissal for failure to prosecute was not an abuse of discretion. Id. at 633, 82 S.Ct. 1386.
Link is about sanctions, not about what opportunity parties should be given to present evidence and make argument before a ruling on the merits of their case. It certainly is not about the proper procedure for dismissal of a school desegregation case in which a school district has been adjudged liable for constitutional violations and subjected to a remedial decree. However, Link does have some general applicability to this case insofar as it discussed the circumstances that can justify entry of an order without the opportunity to be heard: “The adequacy of notice and hearing respecting proceedings that may affect a party’s rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct.” 370 U.S. at 332, 82 S.Ct. 1502. Unlike Link, where the attorney had notice of the pretrial conference and should have known that his failure to ap *727 pear would have consequences, in this case there was no notice to any of the parties, either constitutional violator or victims, that the issue of unitary status was to be considered and decided at the November hearing. To the contrary, there was every assurance that unitary status would not be considered until the scheduled January 2000 hearing, and KCMSD’s requests for continuance strongly suggested that it would not even be in a position to contend that the district was unitary in January 2000. Link demonstrates that simple fairness requires notice and hearing before a decision that dismisses the case.
At oral argument, KCMSD’s counsel suggested that the Jenkins class had the opportunity to present evidence on the unitariness question at the hearing on the class’s motion to stay the dismissal pending appeal. The opportunity to argue a stay motion, with the class having the burden on four discrete issues, which placed the constitutional victims in the position of arguing that the horse should be put back in the barn, does not substitute for a chance to present evidence and argue the merits in a hearing called for the purpose of determining unitariness.
The sua sponte ruling declaring the district unitary and releasing the admitted constitutional violator from further court supervision, without giving notice either to the constitutional violator or the victims or permitting the parties to present evidence and argue these issues, was error.[6]
II.
The Jenkins class, through its counsel, informed the district court and conceded to this court that the issues in the case had come down to implementation of the five plans (classroom practices, professional development, assessment, accountability and curriculum) crafted to improve student achievement and eliminate the achievement gap between white and black students. Counsel conceded to us, as well as to the district court, that when these five plans have been implemented satisfactorily, he will have no further plans to suggest. The remaining issues have been thus narrowed.
The panel ordefed that on remand the judges of the Western District of Missouri should assign this case to another district judge. 205 F.3d at 370. KCMSD objects to the reassignment order and argues that it was improperly entered. Eight of the judges of this court have determined that the court should not' order reassignment on remand.[7]
We reverse and remand for further proceedings in accordance with this opinion. The mandate shall issue forthwith.

. This statement came after the following exchange. When the class counsel said in court there was “widely shared agreement” that KCMSD had not done everything practicable to eradicate the achievement gap, KCMSD did not object to this representation. KCMSD's counsel said: "[W]e have a sense at the moment ... that the district would have an uphill fight in January.”

. In KCMSD’s motion for relief from the de-accreditation action, it asked the court to stay *724 the de-accreditation until the five remedial plans had been fully implemented.

. The action of the State Board of Education was effective May 1, 2000. KCMSD has two years in which to regain accreditation and, if it does not, further serious consequences, including dissolution of the district, may follow.

. In Jenkins XIV, we pointed to the finding of the district court in the first remedial order decisions that "the inferior education indigenous of the state-compelled dual school system has lingering effects in the Kansas City, Missouri School District.” 122 F.3d at 594 (quoting Jenkins v. Missouri, 593 F.Supp. 1485, 1492 (W.D.Mo.1984)). We also quoted later findings, "Segregation has caused a system wide reduction in student achievement in the schools of the KCMSD.... [The] education process has been further 'bogged down’ in the KCMSD by a history of segregated education. Too often, as a result, a higher percentage of black students are among the lower achievers.” Id. (quoting Jenkins v. Missouri, 639 F.Supp. 19, 24, 28 (W.D.Mo.1985), aff'd as modified, 807 F.2d 657 (8th Cir.1986), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987)). The district court found that the adverse effect on minority student achievement still persisted in 1997 in the form of an achievement gap; we held that finding was not clearly erroneous. Id. at 597-99.

. The Seventh Circuit’s opinion stated that a district wanting to phase out a desegregation decree could be permitted to do so only upon presenting evidence that the existing order had outlived its usefulness. See 128 F.3d at 510.

. The court has not found it necessary today to reach the merits of the district court's order. Both dissents, however, are focused on the merits of the case, and almost exclusively on the 1997 opinions of the district court and this court, Jenkins v. Missouri, 959 F.Supp. 1151 (W.D.Mo.), aff'd, 122 F.3d 588 (8th Cir.1997) (Jenkins XIV). After the decision in Jenkins XIV, none of the parties asked for rehearing or filed a petition for certiorari. The parties before us have not raised the issues discussed in the dissents. Indeed, both parties have accepted Jenkins XIV as the standard under which the unitary status issue must be considered.

. Judges Heaney, McMillian, John R. Gibson, and Bye would order reassignment of the case on remand to another district judge.