[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15881
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 21, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 03-21296-CV-FAM

M.D. KENNETH A. THOMAS, et al.,

Plaintiffs,

versus

BLUE CROSS AND BLUE SHIELD ASSOCIATION,
et al.,

Defendants,

DR. RONALD ROBERTSON,

Appellant,

BLUE CROSS BLUE SHIELD OF FLORIDA, INC.,
HEALTH OPTIONS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 21, 2010)

Before EDMONDSON and PRYOR, Circuit Judges, and CAMP,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents the issue whether we have jurisdiction to review an order that summarily denied a physician's motion for permission to prosecute a complaint against Blue Cross Blue Shield of Florida, Inc., and its subsidiary, notwithstanding a permanent injunction that barred physicians from prosecuting claims released as part of the settlement of a national class action. A class of physicians had complained that Blue Cross and Blue Shield Association, Inc., and its member plans had engaged in a scheme to deny, delay, and reduce payments to the physicians. As part of the settlement, the physicians agreed to release the Blue Cross plans from all claims arising from or related to the class action and settlement agreement, and the district court permanently enjoined the members of the class from prosecuting released claims against the Blue Cross plans. Dr. Donald W. Robertson later moved for clarification as to whether the injunction barred his complaint in a Florida court against Blue Cross Blue Shield of Florida, Inc., and Health Options, Inc. Because the order that denied Robertson's motion is not final or otherwise appealable, we dismiss this appeal for lack of jurisdiction.

_____

[*] Honorable Jack T. Camp, United States District Judge for the Northern District of Georgia, sitting by designation.

2

## I. BACKGROUND

In May 2003, several physicians, on behalf of themselves and all other similarly situated physicians, filed a complaint against Blue Cross and Blue Shield Association, Inc., and its member plans throughout the United States. The complaint asserted claims of conspiracy and aiding and abetting under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, and sought damages as well as declaratory and injunctive relief. The physicians' claims were based on allegations that the health insurance companies had "engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct."

The parties eventually agreed to a settlement of the class action. The district court later entered an order that certified the class and granted final approval of the settlement agreement. Love v. Blue Cross & Blue Shield Ass'n, Inc., No. 03-21296 (S.D. Fla. Apr. 19, 2008). As part of the settlement, the Blue Cross plans agreed to implement business practice initiatives and establish a settlement fund for payment of claims to class members. In exchange, the class members agreed to release the Blue Cross plans from all claims arising out of or related to matters referenced in the class action and the settlement agreement:

3

Upon the Effective Date, the **"Released Parties**[]**"** . . . shall be released and forever discharged . . . from any and all causes of action . . . of whatever kind, source or character whether arising under any federal or state law, which . . . includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional, . . . arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement . . . .

The district court permanently enjoined the releasing parties from filing or prosecuting "any or all Released Claims against one or more Released Parties." The parties do not dispute that Robertson is a releasing party or that Blue Cross Blue Shield of Florida and Health Options are released parties. In a separate order, the district court entered judgment in the class action and dismissed all claims against Blue Cross and its member plans with prejudice. The district court expressly retained jurisdiction as to matters relating to the interpretation, administration, and consummation of the settlement agreement, and the enforcement of extant injunctions.

Robertson commenced a civil action against Blue Cross Blue Shield of Florida and its subsidiary, Health Options, in a Florida court in July 2003, two months after the complaint had been filed in the national class action. Robertson's complaint asserted claims of tortious interference with a business relationship,

unauthorized publication, breach of contract, and violation of the duty of good faith and fair dealing. According to Robertson, "the gravamen [of his Florida action] is not Blue Cross' improper policies and procedures with respect to reimbursements and referrals . . . but the retaliatory targeting of Dr. Robertson for speaking out against those policies and procedures."

Although all class members were given an opportunity to opt out of the settlement agreement, Robertson failed to opt out by the prescribed deadline. He attempted to opt out two weeks after the deadline, but the settlement administrator denied his request. Several weeks after the district court granted final approval of the settlement agreement and enjoined class members from filing or prosecuting released claims, the Florida Blue Cross plans demanded that Robertson dismiss his Florida action.

Robertson filed a motion in the district court for two kinds of relief. First, Robertson sought an order declaring that the settlement agreement did not release his claims and granting him permission to prosecute his complaint in the Florida court. Second, Robertson sought an order declaring that, if the district court decided to reconsider its earlier order denying the similar request of a class member to opt out belatedly of the settlement agreement, then it would consider Robertson's request to opt out belatedly as well.

5

On September 4, 2008, the district court denied Robertson's motion in its entirety, but the district court did not address the merits of Robertson's motion. The order stated only that the district court "ha[d] considered the motion, response and the pertinent portions of the record."

## II. DISCUSSION

Neither party challenges our jurisdiction to entertain this appeal, but "we are obligated to address jurisdictional questions sua sponte." Frulla v. CRA Holdings, Inc., 543 F.3d 1247, 1250 (11th Cir. 2008). In their briefs, both Robertson and the Florida Blue Cross plans asserted that we have jurisdiction because the order that denied Robertson's motion is a final decision that disposed of all of his claims. At oral argument, the Florida Blue Cross plans reluctantly conceded that the order is "probably" not a final decision, but Robertson argued that we should exercise jurisdiction under the Declaratory Judgment Act, which provides that declaratory judgments are final decisions, 28 U.S.C. § 2201.

The potential bases for our jurisdiction are few and well defined. Our jurisdiction is ordinarily limited to appeals from final decisions of the district courts. 28 U.S.C. § 1291; see also World Fuel Corp. v. Geithner, 568 F.3d 1345, 1348 (11th Cir. 2009). We also have jurisdiction over a narrow class of cases excepted from the final judgment rule under the collateral order doctrine. Cohen v.

Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S. Ct. 1221, 1225–26 (1949); Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1198 (11th Cir. 2009). Additionally, we have jurisdiction to review certain interlocutory orders of the district courts—those "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1); see also Birmingham Fire Fighters Ass'n 117 v. Jefferson County, 280 F.3d 1289, 1292 (11th Cir. 2002).

Because our jurisdiction is limited to a narrow class of decisions, our jurisdiction to entertain this appeal hinges on the nature of the order that denied Robertson's motion. The district court entered the order in a postjudgment proceeding. Robertson's motion relied on the jurisdiction that the district court retained to interpret the settlement agreement and enforce the permanent injunction barring class members from prosecuting released claims. Robertson's motion sought clarification regarding whether the claims in his Florida action are released claims that are enjoined from prosecution. Robertson's motion, styled as a "Motion for Permission to Proceed with His Claims against Defendants Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc.," described the relief Robertson sought as "an order allowing the Robertson Action to proceed," an "[o]rder stating that the Robertson Action is not stayed by this action," and an order stating that "the

Settlement did not release Blue Cross from Dr. Robertson's claims."

Because the district court did not discuss the merits of Robertson's motion, the effect of the order summarily denying Robertson's motion is unclear. One plausible interpretation is that the denial is an implicit ruling that Robertson's claims are released and that he is enjoined from prosecuting them, but another plausible interpretation is that the district court denied Robertson's motion for a procedural defect. In the absence of an explanation from the district court, we are left to guess about the reason for its decision.

Robertson's motion does not fit neatly within our traditional scheme for the enforcement of injunctions, and it is possible that the district court denied the motion on that basis. As we have explained repeatedly, "injunctions are enforced through the district court's civil contempt power." Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1134 n.23 (11th Cir. 2005); see also Reynolds v. McInnes, 338 F.3d 1201, 1208 (11th Cir. 2003); Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000); Newman v. Alabama, 683 F.2d 1312, 1318 (11th Cir. 1982). If a party contends that another party is violating an injunction, the aggrieved party should move the court for an order to show cause why the other party should not be held in civil contempt. Roberts, 207 F.3d at 1298.

The most we can say about the order that summarily denied Robertson's

motion is that it did not alter the status quo. The order did not enforce the permanent injunction by imposing noncontingent contempt sanctions on Robertson for prosecuting released claims, which plainly would be an appealable order. Combs v. Ryan's Coal Co., 785 F.2d 970, 976–77 (11th Cir. 1986). Nor did the order deny a motion for an order to show cause why Robertson should not be held in contempt, which also would be an appealable order. Davis v. Bd. of Sch. Comm'rs, 517 F.2d 1044, 1052 (5th Cir. 1975). Nor did the order deny contempt sanctions at the conclusion of a show cause hearing, which also would be an appealable order. See Combs, 785 F.2d at 976–77. The order left the parties in the same position as before Robertson filed his motion.

With this understanding of the order, we consider three potential bases for exercising jurisdiction over Robertson's appeal. First, we consider whether the order is a final decision within the meaning of section 1291. Second, we consider whether the order falls within our jurisdiction under the collateral order doctrine. Third, we consider whether the order constitutes an interlocutory order that qualifies for appeal under section 1292(a)(1). In making these determinations, "we take a 'functional approach, looking not to the form of the district court's order, but to its actual effect.'" Birmingham Fire Fighters, 280 F.3d at 1293 (quoting Sierra Club v. Marsh, 907 F.2d 210, 213 (1st Cir. 1990)).

9

*A. Section 1291 Jurisdiction*

Under section 1291, we "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. In a conventional case, "[a] final order is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." World Fuel Corp., 568 F.3d at 1348 (internal quotation marks omitted). In postjudgment proceedings, the meaning of a "final decision" is less clear because the proceedings necessarily follow a final judgment. Ass'n of Cmty. Orgs. for Reform Now v. Ill. State Bd. of Elections, 75 F.3d 304, 306 (7th Cir. 1996). Postjudgment decisions "'are themselves subject to the test of finality.'" Delaney's Inc. v. Ill. Union Ins. Co., 894 F.2d 1300, 1304 (11th Cir. 1990) (quoting 9 James W. Moore et al., Moore's Federal Practice ¶ 110.14[1], at 196–97 (2d ed. 1988)). We "treat the postjudgment proceeding as a free-standing litigation, in effect treating the final judgment as the first rather than the last order in the case." Ass'n of Cmty. Orgs for Reform Now, 75 F.3d at 306. A postjudgment order is final for purposes of section 1291 only if the order disposes of all issues raised in the motion. Autotech Techs. LP v. Integral Research & Dev. Corp., 499 F.3d 737, 745 (7th Cir. 2007); see also Motorola, Inc. v. Computer Displays Int'l, Inc., 739 F.2d 1149, 1154 (7th Cir. 1984).

For two reasons, we conclude that the order denying Robertson's motion

lacks the finality required for us to exercise jurisdiction under section 1291. First, as we discussed above, the summary denial of Robertson's motion did not expressly rule that Robertson's claims are released. Nor did it rule that his claims are not released. We are reluctant to put words into the mouth of the district court, especially given the unconventional nature of Robertson's motion. The order did not "finally settle[] the matter in litigation." Delaney's, 894 F.2d at 1305.

Second, even if the order implicitly advised Robertson that his claims are released and that he is enjoined from prosecuting them, the order did not dispose of the matter because it "did not hold [Robertson] in contempt or impose any sanction" for violating the injunction. Major v. Orthopedic Equip. Co., 561 F.2d 1112, 1115 (4th Cir. 1977). Although the order did not direct the parties to take any further action, our decisions clearly instruct that permanent injunctions are enforced through the civil contempt power of the court. E.g., Roberts, 207 F.3d at 1298. Allowing the district court an opportunity to enforce the permanent injunction through the usual means of contempt proceedings does not preclude appellate review; it postpones our review until the district court has finally settled the matter in litigation. If we were to exercise our appellate jurisdiction at this early stage, before the district court has had an opportunity to enforce the permanent injunction, "the effect would be to tie the hands of the district court . . . and augment our own

11

workload."  Combs, 785 F.2d at 977.

At oral argument, Robertson argued that we should construe the order that denied his motion as a declaration of his rights with respect to the settlement agreement, even though he did not file a complaint under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.  Section 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  A declaration under that Act has "the force and effect of a final judgment or decree and shall be reviewable as such."  Id.

It is true that Robertson's motion sought an order declaring that his claims are not released, but Robertson did not file a complaint for a declaratory judgment. Robertson instead filed a motion in a postjudgment proceeding.  As the Ninth Circuit recently explained, "'a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment.'"  Kam-Ko Bio-Pharm Trading Co., Ltd.-Australasia v. Mayne Pharma (USA), Inc., 560 F.3d 935, 943 (9th Cir. 2009) (quoting Int'l Bhd. of Teamsters v. E. Conference of Teamsters, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)).  The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."  Fed. R. Civ. P. 57.  As a result, "the requirements of pleading and

practice in actions for declaratory relief are exactly the same as in other civil actions," including the requirement that "the action is commenced by filing a complaint." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2768 (3d ed. 1998).

Robertson urges us to follow the approach of the Third Circuit in Interdynamics, Inc. v. Firma Wolf, 698 F.2d 157 (3d Cir. 1982). That court ruled that it had jurisdiction over an appeal of an order entered in a postjudgment proceeding related to a consent decree that enjoined a company from infringing the patent of another company. Id. at 159–63. The allegedly infringing party, Trans Tech, moved for an order requiring the complaining party to show cause why Trans Tech should be held in contempt for producing a certain product. Id. at 159–62. After a hearing to show cause, the district court entered an order advising Trans Tech that it would be in civil contempt if it produced and marketed the product. Id. at 160. The Third Circuit noted that the order was not final in the traditional sense, given that it "expressly contemplated the initiation of further legal proceedings before any sanctions would be imposed on Trans Tech," but the court nonetheless held that the order amounted to a declaratory judgment and was appealable as a final decision on that basis. Id. at 164–65. It reached this decision even though Trans Tech did not elect to sue under the Declaratory Judgment Act. Id. at 165.

13

The Third Circuit stated that its decision was influenced by the "special role" of declaratory judgments in patent cases. Id.

We are not bound by the decision of the Third Circuit in Interdynamics, and we choose not to follow it for two reasons. See Cuban Am. Bar Ass'n v. Christopher, 43 F.3d 1412, 1424 n.9 (11th Cir. 1995). First, unlike the order in Interdynamics, the order that denied Robertson's motion does not explicitly rule that Robertson's claims are released or that he would be held in contempt if he continues to prosecute his claims. In fact, the order does not declare anything except that Robertson's motion is denied. Second, the Declaratory Judgment Act and the Federal Rules of Civil Procedure impose specific requirements for declaratory judgment actions, and we should not lightly disregard those requirements to exercise jurisdiction over an otherwise nonfinal order. In reaching its decision, the Third Circuit explained that declaratory judgments play a special role in patent cases because they allow a possible infringer to avoid the accrual of a large amount of avoidable damages and prevent a patent holder from making oppressive use of the patent. Interdynamics, 698 F.2d at 164–65. Even if the special role of declaratory judgments in patent cases were a sufficient reason to construe an otherwise nonfinal order as a declaratory judgment to provide immediate appellate review, the postjudgment enforcement of a permanent

14

injunction barring members of a national class from prosecuting released claims about racketeering and physician billings would not present the same, or even similar, concerns. The Declaratory Judgment Act is clear that only declarations made "upon the filing of an appropriate pleading" have "the force and effect of a final judgment." 28 U.S.C. § 2201. Robertson's motion is not an appropriate pleading, <u>see</u> Fed. R. Civ. P. 7, and the order that denied his motion is not a final decision.

## B. *Collateral Order Jurisdiction*

The order that denied Robertson's motion also is not appealable under the collateral order doctrine. "'To come within the "small class" of decisions excepted from the final-judgment rule by [the collateral order doctrine], the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" <u>Miccosukee Tribe</u>, 559 F.3d at 1198 (quoting <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458 (1978)). We easily conclude that the order does not satisfy this stringent test. As explained above, the order does not finally settle the issue whether Robertson is enjoined from prosecuting his complaint in the Florida court. As a result, the order does not "conclusively determine the disputed question."

15

## C. Section 1292(a)(1) Jurisdiction

Finally, we consider whether section 1292(a)(1), which allows appeals of orders modifying injunctions, provides a basis for jurisdiction. For purposes of 1292(a)(1), the distinction between an order clarifying an underlying injunction and an order modifying an injunction is of crucial importance, as only the latter is an appealable order. See Birmingham Fire Fighters, 280 F.3d at 1292–93; Ass'n of Cmty. Orgs. for Reform Now, 75 F.3d at 306; Major, 561 F.2d at 1115. An order modifies, rather than clarifies, the underlying injunction "when it actually changes the legal relationship of the parties." Birmingham Fire Fighters, 280 F.3d at 1293. An order that interprets an injunction changes the legal relationship of the parties only when it blatantly misinterprets the injunction. Id. To determine whether an order blatantly misinterprets the injunction, we look for misinterpretations that "leap[] from the page." Id. This limited inquiry prevents the modification provision of section 1292(a)(1) from "'serving as a back door to appellate review of every administrative clarification the district court makes.'" Id. (quoting Gautreaux v. Chi. Hous. Auth., 178 F.3d 951, 957 (7th Cir. 1999)).

Even if we construe the order as ruling that Robertson's claims are released and that Robertson is enjoined from prosecuting them, the order does not qualify for appeal under section 1292(a)(1) because that ruling would constitute a clarification,

not a modification, of the underlying injunction. The claim release is extremely broad, extending to any and all claims arising from or related to matters referenced in the class action or settlement agreement. Robertson's claims are based on allegations that the Florida Blue Cross plans retaliated against him for complaining about the plans' improper reimbursement practices. Allegations that the Blue Cross plans improperly delayed, denied, and reduced payments to physicians formed the crux of the class action. The order that denied Robertson's motion, at most, clarified that Robertson's complaint in a Florida court was released, but the order did not modify the permanent injunction. "It is simply an interpretation, not appealable under 28 U.S.C. § 1292(a)(1)." Major, 561 F.2d at 1115.

### III. CONCLUSION

We **DISMISS** Robertson's appeal for lack of jurisdiction.

17