[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-10819

_____

In re: DONALD H. BAILEY

                                                                    Debtor.

_____

KAI HANSJURGENS,

                                                    Plaintiff-Appellant,

*versus*

DONALD H. BAILEY,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:21-cv-00105-RSB-CLR,

Bkcy No. 4:07-bk-41381-EJC

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and ABUDU, Circuit Judges.

ROSENBAUM, Circuit Judge:

Baseball Hall of Famer Frank Robinson famously said that "[c]lose only counts in horseshoes and hand grenades."[1]  To that list we add one more thing:  close—as long as it's close enough to qualify as "substantial compliance"—also counts when it comes to following a state's rules for reviving a judgment in federal court under Federal Rule of Civil Procedure 69(a).

More than a decade ago, Appellee Donald Bailey obtained a bankruptcy judgment against Appellant Kai Hansjurgens for tortious interference with contract.  That judgment included punitive damages based on Hansjurgens's "malice and intent to injure" and "cavalier attitude toward [his] duties as [a] litigant[]."  *Bailey v. Hako-Med USA, Inc.*, No. 09-4002, at 8–9 (Bankr. S.D. Ga. Apr. 7, 2011).  Hansjurgens has not paid Bailey a cent.

Georgia state law gave Bailey ten years to collect.  But before Bailey's judgment expired irretrievably, Bailey filed—and the bankruptcy court granted—a motion to revive that judgment.  Hansjurgens does not dispute that the underlying judgment is valid, but he

_____

[1] Nick Acocella, *More Info on Frank Robinson*, ESPN CLASSIC (last visited Jan. 12, 2024), https://www.espn.com/classic/000728frankrobinsonadd.html [https://perma.cc/5ATF-87HL].

still seeks to keep his streak of dodging payment intact. This time, Hansjurgens claims that Bailey didn't strictly comply with Georgia state-law procedures to revive his judgment. But the district court found—and Bailey argues on appeal—that Bailey did enough to satisfy the Georgia judgment-revival procedure under Federal Rule of Civil Procedure 69(a). We agree. So after careful consideration, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.    Original Bankruptcy Proceedings and Related Appeals

Bailey and Hansjurgens's dispute originated with a business arrangement. Bailey leased medical equipment to physicians. To obtain some of his leasing inventory, Bailey entered into a distributorship agreement with Hansjurgens and his medical device company Hako-Med USA, Inc. *Bailey v. Hako-Med USA, Inc. (In re Bailey)*, 2010 Bankr. LEXIS 6300, at *2 (Bankr. S.D. Ga. 2010). Under this agreement, Bailey bought several Hako-Med PRO Elec DT 2000 and VasoPulse 2000 devices. Healthcare professionals use these machines to non-invasively treat lower back pain. *Id.* Unfortunately for Bailey, though, he had trouble selling the devices. In Bailey's view, his sales problem arose because Hansjurgens and Hako-Med recommended billing codes that resulted in lower reimbursement rates than they had touted. *Id.* at *3–4.

After the distributorship agreement expired, a medical-equipment rental company, New River, offered to pay Bailey $1,000 each month per device to lease the devices to physicians' offices.

*Id.* at *5. But Hansjurgens and Hako-Med threatened (unfounded) legal action against physicians who were negotiating with Bailey and New River. *Id.* at *6. So Bailey stopped marketing the devices, and New River shut down its operations. *Id.* at *9.

Bailey filed for Chapter 11 bankruptcy. In bankruptcy court, Bailey brought an adversary proceeding against Hansjurgens and Hako-Med for tortious interference with contract.

The bankruptcy court held a trial and entered an interlocutory order in favor of Bailey. *Id.* at *27. It concluded that Hansjurgens had indeed tortiously interfered "to bully the Potential Purchasers out of negotiations" and "to advance his own pecuniary interest." *Id.* at *18–19.

After finding that Hansjurgens and Hako-Med "acted with malice and intent to injure," the bankruptcy court ordered post-judgment discovery on punitive damages and attorney's fees. *Id.* at *21, *27. Bailey's post-judgment discovery requests went "largely unanswered," so Bailey moved to compel. *Bailey*, No. 09-4002, at 2. The bankruptcy court ordered Hansjurgens and Hako-Med to submit discovery responses for the court's inspection, but they did not do so. *Id.* at 2–3.

In the meantime, the bankruptcy court proceeded with its trial on punitive damages and attorney's fees. In April 2011, the bankruptcy court entered judgment for Bailey and awarded $893,973.64 total: $277,336.13 in compensatory damages, $554,672.26 in punitive damages, and $61,965.25 in attorney's fees. *Id.* at 12. In support of its ruling, the court characterized

Hansjurgens's trial testimony as "evasive and uncooperative" and noted his "cavalier attitude toward [his] duties as [a] litigant[]" throughout the discovery process. *Id.* at 3, 9. And it found that Hansjurgens's failure to produce post-judgment discovery was "intentional" and "possibly motivated by a desire to perpetrate a fraud on the Court." *Id.* at 10.

Hansjurgens repeatedly and unsuccessfully appealed.

First, before the bankruptcy court entered final judgment, Hansjurgens sought to appeal the partial-liability determination to the district court. But the district court dismissed the appeal for lack of jurisdiction because Hansjurgens never obtained leave to appeal the interlocutory order. *Hansjurgens v. Bailey (In re Bailey)*, 489 F. App'x 425, 425 (11th Cir. 2012). We affirmed. *Id.*

Hansjurgens then moved to reopen his appeal. The district court denied the motion. Because the bankruptcy court later issued a final judgment, we dismissed as moot Hansjurgens's appeal of that denial. *Hansjurgens v. Bailey*, No. 12-12465, at 4 (11th Cir. 2013).

In his third effort on appeal, Hansjurgens appealed the final judgment to the district court. But the district court found that Hansjurgens's notice of appeal was untimely filed, and he failed to show excusable neglect as Federal Rule of Bankruptcy Procedure 8002(c)(2) requires. *Hansjurgens v. Bailey*, No. CV411-202, 2012 WL 3289001, at \*3 (S.D. Ga. Aug. 10, 2012). We affirmed the dismissal for lack of jurisdiction. *In re Bailey*, 521 F. App'x 920, 922 (11th Cir. 2013).

Around the same time, Bailey moved the bankruptcy court to hold Hansjurgens in contempt based on his and Hako-Med's continued failure to produce post-judgment discovery. Hansjurgens did not appear at the contempt hearing. So the bankruptcy court submitted a proposed contempt order to the district court. *Bailey v. Hako-Med USA, Inc. (In re Bailey)*, 2011 Bankr. LEXIS 5424 (Bankr. S.D. Ga. 2011). The proposed order directed that Hansjurgens "be placed under arrest and imprisoned for his continuing noncompliance" and that Hansjurgens reimburse Bailey's reasonable expenses incurred. *Id.* at *19.

The district court eventually adopted the bankruptcy court's proposed order in its entirety, specifying that an arrest warrant would issue after 30 days if Hansjurgens did not comply with the discovery order. *Bailey v. Hako-Med USA, Inc.*, 2014 U.S. Dist. LEXIS 119697, at *3 (S.D. Ga. 2014). The court also ordered Hansjurgens to pay Bailey's reasonable expenses arising from the contemptible conduct, including attorney's fees, but it left calculation of those expenses to the bankruptcy court. *Id.* at *3–4. Once again, Hansjurgens did not comply. But the district court never issued an arrest warrant.

Hansjurgens again appealed to this Court, and we dismissed the appeal for lack of jurisdiction. *In re Bailey*, No. 14-14905 (11th Cir. 2015), *cert. denied*, 580 U.S. 820 (2016). In our opinion, we noted that both we and the U.S. Marshals "tried and failed to contact" Hansjurgens about his own appeal. *Id.* at 5.

### B.    Revival Proceedings

Under Georgia state law, the judgment against Hansjurgens became dormant on April 7, 2018, and was due to become unenforceable on April 7, 2021. *See* GA. CODE ANN. § 9-12-61 (2020).[2] Before that could happen, though, in November 2020, Bailey requested a status conference with the bankruptcy court. The bankruptcy court set the conference for March 18, 2021. To inform Hansjurgens of the status conference, the Bankruptcy Noticing Center sent notice of the telephonic status conference to Hansjurgens's Hawaii address and to Hako-Med's registered agent

On March 12, 2021, Bailey filed an "Emergency Motion to Revive Dormant Judgment" in the same adversarial proceeding as the original judgment. In his motion, Bailey alleged that the judgment "remains unsatisfied," as Hansjurgens and Hako-Med "have refused to pay any of the award."

The bankruptcy court conducted its status conference, set a telephonic hearing on the motion for March 30, and determined that process would be served by mail. Bailey and the Bankruptcy Noticing Center mailed notice of the hearing to Hansjurgens, Hako-Med, and Hako-Med's registered agent at their Nevada and Hawaii addresses. At the court's direction, Bailey filed an amended certificate of service attesting that he had mailed the motion and

---

[2] Throughout this opinion, we cite the 2020 statute, the version in effect when the judgment against Hansjurgens became dormant and Bailey filed the motion to revive.

notice of hearing to Hansjurgens, Hako-Med, registered agents (EastBiz.com, Inc. and Alive, Inc.), and Hansjurgens's attorney, Craig Marc Rappel, at additional addresses in Nevada, Hawaii, and Florida. Bailey's counsel also called Rappel the day before the hearing. But Hansjurgens failed to appear at the hearing or otherwise contact the court.

On April 1, 2021, the bankruptcy court granted Bailey's motion. It found that the judgment remained unpaid and that Bailey timely moved to revive within the limitations period. As a result, the bankruptcy court concluded, Bailey had satisfied Georgia's procedural requirements and was entitled to revival of the judgment against Hansjurgens.

Hansjurgens, proceeding *pro se*, appealed to the district court. He raised four objections: (1) the bankruptcy court lacked personal jurisdiction over him; (2) Bailey failed to comply with Georgia procedures for revival of judgments;[3] (3) Bailey did not state good cause to warrant issuance of an "emergency" order; and (4) Bailey failed to properly notify him of the proceedings and serve him with a summons, violating his due-process rights.

---

[3] Hansjurgens contends that Bailey did not strictly comply with Georgia's scire facias procedures. We discuss Georgia's scire facias procedures in more detail later in this opinion, but for now, we note simply that scire facias "resembles a summons and directs the" judgment debtor "to appear in the issuing court on a certain date and to show cause why the identified judgment should not be revived and an execution be issued." *Popham v. Jordan*, 628 S.E.2d 660, 662 (Ga. Ct. App. 2006); *see also* GA. CODE ANN. § 9-12-63.

The district court affirmed the bankruptcy court's order. Hansjurgens now appeals to this Court.

## II.    JURISDICTION

The district court exercised bankruptcy appellate jurisdiction under 28 U.S.C. § 158(a).  We have appellate jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291 because the revival judgment is a final order.

To be final, an order "must end the litigation on the merits, leaving nothing to be done but execute the judgment." *Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1136 (11th Cir. 2008).  We take a functional approach to the finality inquiry, "looking not to the form of the" order "but to its actual effect." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) (citation and quotation marks omitted).  And we treat finality more flexibly in the bankruptcy context. *Donovan*, 532 F.3d at 1136.  To that end, a final order generally must resolve the adversary proceeding or controversy in question but need not resolve the bankruptcy proceedings in their entirety. *Id.*

For postjudgment proceedings, we determine finality through a two-step inquiry.  First, we "'treat the postjudgment proceeding as a free-standing litigation, in effect treating the final judgment as the first rather than the last order in the case.'" *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (quoting *Thomas*, 594 F.3d at 829).  Second, we ask whether the order "disposes of all the issues raised in the motion that initially sparked the postjudgment proceedings" and whether the order is

"apparently the last order to be entered in the action." *Id.* (citations and quotation marks omitted).

Under this framework, the revival judgment is a final order over which we have appellate jurisdiction. Bailey's emergency motion to revive the judgment "initially sparked the postjudgment proceedings," and the bankruptcy court's order granting that motion "dispose[d] of all the issues raised" therein. *See id.* At the same time, the district court's order "dispose[d] of all the issues" in the revival proceedings and was "the last order to be entered in the action." *See id.* And there is no further merits determination to be made, since scire facias proceedings do not permit review on the merits. *See Heslen v. Heslen*, 404 S.E.2d 592, 592 (Ga. Ct. App. 1991) ("A grant of a writ of scire facias does not authorize the examination of the original judgment's validity." (citation omitted)). In short, the revival judgment qualifies as a final order over which we have appellate jurisdiction.

### III.    STANDARD OF REVIEW

In bankruptcy cases, we sit as a "'second court of review.'" *Ga. Dep't of Revenue v. Mouzon Enters., Inc. (In re Mouzon Enters., Inc.)*, 610 F.3d 1329, 1332 (11th Cir. 2010) (quoting *Finova Cap. Corp. v. Larson Pharm. Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294, 1299 (11th Cir. 2005)). In this capacity, we "'examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards of review as the district court.'" *Id.* We review the bankruptcy court's legal conclusions de novo and

factual findings for clear error. *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1296 (11th Cir. 2009).

## IV.    DISCUSSION

### A.    *The district court retained personal jurisdiction over Hansjurgens for the revival proceedings.*

First, Hansjurgens claims that the bankruptcy court lacked personal jurisdiction over him for the revival proceedings.[4]  The threshold question we must address in considering this issue is whether the bankruptcy court needed to re-establish personal jurisdiction.  We conclude that it did not.

Bailey did not file a new action against Hansjurgens.  Rather, he filed, with the same bankruptcy court and under the same case caption as the adversary proceeding, an emergency motion for revival that the bankruptcy court and district court construed as a motion seeking revival in the form of scire facias.  "Scire facias to revive a judgment is not an original action but is the continuation of the action in which the judgment was obtained."  GA. CODE ANN. § 9-12-62; *see also Mitchell v. Chastain Fin. Co.*, 233 S.E.2d 829, 832 (Ga. Ct. App. 1977) (scire facias to revive a judgment "is merely a supplementary step in the original action").  So if the bankruptcy court had personal jurisdiction over Hansjurgens for the adversary proceeding—and neither party contests that it did—the

---

[4] Bailey moved to dismiss based on the fugitive-disentitlement doctrine.  We carried that motion with the case.  But because the merits require affirmance in any case, we **DENY AS MOOT** Bailey's motion to dismiss.

bankruptcy court did not need to re-establish that jurisdiction for the continuation of that proceeding. In other words, the bankruptcy court retained personal jurisdiction over Hansjurgens from the original bankruptcy adversary proceeding for the purposes of the revival judgment.

**B.** *The district court properly revived the judgment against Hansjurgens.*

Hansjurgens raises two objections to how Bailey revived the judgment against him: (1) the procedure failed to strictly comply with Georgia law governing scire facias proceedings; and (2) it violated due process. We find neither availing.

*1. Rule 69 does not require strict compliance with Georgia scire facias procedures.*

We begin by identifying the relevant rules of procedure in a judgment-revival proceeding in federal bankruptcy court. Rule 81(a)(2), Fed. R. Civ. P., makes the Federal Rules of Civil Procedure applicable to bankruptcy proceedings "to the extent provided by the Federal Rules of Bankruptcy Procedure." And Federal Rule of Bankruptcy Procedure 7069, in turn, provides that Federal Rule of Civil Procedure 69 "applies in adversary proceedings." Fed. R. Bankr. P. 7069.

So we turn to Federal Rule of Civil Procedure 69. Rule 69 provides that the execution of judgments in adversary proceedings "and in proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where

22-10819                Opinion of the Court                13

the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1) (incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7069).[5] That requires us to reconsider the Federal Rules of Bankruptcy Procedure. But no Federal Rule of Bankruptcy Procedure "governs" revival of judgments. So under Rule 69, the creation, dormancy, and execution of the judgment against Hansjurgens must "accord with" Georgia state procedures.

We begin, as always, with the Rule's text. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Rule 69's key phrase is "accord with."

In its original form, Rule 69 provided,

---

[5] The bankruptcy and district courts concluded that Federal Rule of Civil Procedure 81(b) abolishes scire facias in federal court, and under that rule, Bailey could obtain relief previously available through scire facias by "appropriate action or motion." So the courts determined that Bailey needed to substantially comply with Georgia's scire facias procedures, and filing the motion to revive sufficed. On appeal, for the first time, Hansjurgens objects to the application of Rule 81(b), relying on our decision in *Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283 (11th Cir. 2016). *Rosenberg* held that the Federal Rules of Civil Procedure "only apply" in bankruptcy cases "to the extent they have been explicitly incorporated by the Federal Bankruptcy Rules," *id.* at 1288, and Hansjurgens asserts that Rule 81 has not been explicitly incorporated. We need not decide this issue regardless of whether Hansjurgens preserved it. Hansjurgens argues that the bankruptcy court should have issued an adversarial summons after Bailey initiated the revival proceeding by motion. Although bankruptcy courts may issue adversarial summonses, *see* Fed. R. Bankr. P. 7004, we reject the argument that the failure of the bankruptcy court to issue one here violated Rule 69(a).

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be *in accordance with* the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed. R. Civ. P. 69(a) (1938) (emphasis added). In 2007, Rule 69(a) was amended as part of a broader effort to simplify the language of the Federal Rules of Civil Procedure without changing their substance. Fed. R. Civ. P. 69 advisory committee's note to 2007 Amendment; *see also Mills v. Foremost Ins.*, 511 F.3d 1300, 1308 n.11 (11th Cir. 2008). The phrase "accord with" replaced the phrase "in accordance with." Because these phrases are substantially the same, we look to dictionary definitions from the time of initial adoption of the "accordance" language, 1938. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1738–39 (2020); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 40, at 257 (2012) (explaining that "new language" in a "legislative restyling exercise[]" like the revised Rule 69(a) "does not amend prior enactments unless it does so clearly").

At that time, "accord" meant "to agree or concur," *Accord*, Black's Law Dictionary (3d ed. 1933), or "to agree, be in harmony, be consistent," *Accord*, Oxford English Dictionary (2d ed. 1933). *See also Accord*, Webster's New International Dictionary (2d ed. 1938) ("To bring into agreement; to reconcile; to . . . harmonize"). Those

definitions do not require revival proceedings in federal court to strictly follow state-law procedures, however impractical or arcane. Rather, they suggest that revival proceedings in federal court must only "agree" or "be in harmony"—in other words, substantially comply—with state-law procedures. And "when the meaning of the [Rule's] terms is plain, our job is at an end." *Bostock*, 140 S. Ct. at 1749.[6]

Still, though, as we explain after we describe Georgia's scire facias procedures, practicalities reinforce the natural meaning of "accord." Under Georgia law, a "judgment shall become dormant and shall not be enforced . . . [w]hen seven years shall elapse after the rendition of the judgment before execution is issued thereon[.]" GA. CODE ANN. § 9-12-60. The judgment creditor may "renew[] or revive[]" the dormant judgment "by an action or by scire facias, at the option of the holder of the judgment, within three years from the time it becomes dormant." *Id.* § 9-12-61. These two statutory provisions "operate in tandem as a ten-year statute of limitation for the enforcement of Georgia judgments." *Corzo Trucking Corp. v. West*, 636 S.E.2d 39, 40 (Ga. Ct. App. 2006). The 2011 judgment against Hansjurgens became dormant on April 7, 2018, and would have expired on April 7, 2021.

---

[6] Even if we look to dictionary definitions from 2007, when the current version of the Rule was adopted, our interpretation does not change. *See, e.g.*, *Accord*, Black's Law Dictionary (8th ed. 2004) ("To agree"); *Accord*, Merriam-Webster's Collegiate Dictionary (11th ed. 2007) ("to be consistent or in harmony: AGREE"); *Accord*, American Heritage Dictionary (4th ed. 2006) ("To be in agreement, unity, or harmony").

Scire facias "resembles a summons and directs the" judgment debtor "to appear in the issuing court on a certain date and to show cause why the identified judgment should not be revived and an execution be issued." *Popham*, 628 S.E.2d at 662. "Scire facias to revive a judgment is not an original action but is the continuation of the action in which the judgment was obtained." GA. CODE ANN. § 9-12-62. To that end, "[i]n no case and under no circumstances can the merits of the original judgment be inquired into" in scire facias proceedings. *Mitchell*, 233 S.E.2d at 833.

If the judgment debtor resides outside the state, the "judgment may be revived . . . by such process as is issued in cases in which the defendant resides in this state, provided that" he "shall be served with scire facias by publication in the newspaper in which the official advertisements of the county are published[.]" GA. CODE ANN. § 9-12-67. Neither "record[ing] the judgment on the general execution docket" nor "mak[ing] any efforts to collect the judgment" is a "prerequisite to reviving a dormant judgment." *Bowers v. Jim Rainwater Builder & Props., Inc.*, 416 S.E.2d 832, 832 (Ga. Ct. App. 1992).

Hansjurgens asserts that Bailey and the bankruptcy court did not strictly comply with these state-law procedures. He is right about that. It is undisputed that Bailey did not file a new judgment to seek revival. It is also undisputed that Bailey did not strictly follow traditional scire facias procedures. These traditional procedures include issuance from "the court of the county in which the judgment was obtained" and service "by the sheriff of the county

in which [the judgment debtor] resides" twenty days prior to the hearing, or service by publication for two months before the hearing. GA. CODE ANN. §§ 9-12-63, 9-12-67.

But, again, we do not interpret Rule 69(a) to require strict compliance—only that federal revival proceedings "accord," or substantially comply, with state procedures. *See Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2d Cir. 1963) (holding that an enforcement hearing in lieu of a state scire facias action "accords with the spirit of the Rules and seems to be a sufficiently close adherence to state procedures"); *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1452 (9th Cir. 1996); 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 3012 (3d ed. 2023); 13 *Moore's Federal Practice Civil* § 69.03[3]. As the Seventh Circuit has opined, "[w]e do not think the draftsmen of Rule 69 meant to put the judge into a procedural straitjacket, whether of state or federal origin." *Resol. Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) (citation omitted). And as we've explained, the Rule's plain text does not compel a "procedural straitjacket" in the form of a strict-compliance requirement. We will not impose one here.

What's more, Georgia scire facias procedures do not squarely fit within the federal court system. Under Georgia state law, the clerk of the state court in which the judgment was obtained must issue scire facias, and that county's sheriff must serve it. GA. CODE ANN. § 9-12-63. But Georgia federal courts do not control county sheriffs. Requiring strict compliance with scire facias procedures in a federal forum that cannot order the state-

mandated relief makes little sense. And insisting on county-specific procedures in federal court, especially in a state with 159 counties, is impractical. Rather, the Federal Rules of Civil Procedure, which apply uniformly in federal court, require one procedure for obtaining relief: filing a motion. *See* Fed. R. Civ. P. 7(b)(1) (incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7007). That is exactly what Bailey did here.

We conclude that Bailey substantially complied with Georgia's scire facias statute, so revival was proper. Scire facias provides notice of court proceedings and the opportunity "to show cause why the identified judgment should not be revived and an execution be issued." *Popham*, 628 S.E.2d at 662. Service here accomplished the same goal. Hansjurgens received at least twelve notices of the revival hearing, and his participation in these proceedings has provided him an opportunity to object to the revival judgment. In other words, the purposes of scire facias have been served. *Cf. Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990) (upholding a default judgment when the summons omitted a return date but substantially complied with Fed. R. Civ. P. 4(b) and the defendant was not prejudiced by the defect); *Chambers*, 313 F.2d at 256.

Indeed, as a purely practical matter, there is nothing more that can be accomplished by remanding for strict compliance. Remanding would not change the ultimate result of the revival proceedings. To be sure, the district court could require personal service on Hansjurgens. But a revival motion may be timely even if

22-10819              Opinion of the Court                    19

service is not perfected during the dormancy period, so long as the motion is filed before the judgment expires. *Stahle v. Jones*, 3 S.E.2d 861, 862 (Ga. Ct. App. 1939). And here, Bailey timely filed his revival motion. So even if the district court ordered Bailey to personally serve it on Hansjurgens, the revival proceedings would still go forward.

Personal service could not accomplish more than what this record demonstrates has already occurred: Hansjurgens's actual notice of the proceedings. Plus, under Georgia law, parties may not challenge "the merits of the original judgment" in scire facias proceedings to revive it. *Bowers*, 416 S.E.2d at 832–33. So since Bailey's revival motion was timely, and since we dispose of Hansjurgens's procedural objections in this appeal, Hansjurgens has no other basis for a challenge to the revival proceedings.

Put simply, the only outcome on remand would be to reach the same result: the entry of a valid revival judgment, though after even more time and expense. Because service here was in "accord" with Georgia's scire facias procedures, and because remanding for personal service would not change the outcome of the revival proceedings, we hold that the bankruptcy court properly revived the dormant judgment.

### 2. The revival proceedings did not violate due process.

Finally, Hansjurgens argues that the bankruptcy court violated his due-process rights when it did not require personal service through an adversarial summons, contrary to Georgia state law. Hansjurgens does not claim that Bailey mailed the revival motion

and notice of hearing to the wrong addresses—addresses that Hansjurgens had provided to the court. Instead, Hansjurgens complains that, despite delivery to the addresses he provided and a call to his former (and later) attorney advising him of the proceeding, Hansjurgens was unaware of the proceeding until after the judgment was revived.

Our precedent does not require service in one particular form to satisfy due process—rather, "[d]ue process is a flexible concept that varies with the particular circumstances of each case, and myriad forms of notice may satisfy" its requirements. *Arrington v. Helms*, 438 F.3d 1336, 1350 (11th Cir. 2006). Under this "flexible" framework, "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1349–50 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Both the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure authorize service by mail. First, Federal Rule of Civil Procedure 5 applies in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7005. Under that rule, "mailing" the motion and notice of hearing "to the person's last known address—in which event service is complete upon mailing"—accomplishes service. Fed. R. Civ. P. 5(b)(2)(C). Separately, the Federal Rules of Bankruptcy Procedure authorize service by mail "to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession" or to "an

agent of such defendant authorized by appointment or by law to receive service of process." Fed. R. Bankr. P. 7004(b)(1), (8).

Bailey certified that he mailed the motion to revive and notice of hearing to Hansjurgens at three Hawaii and Nevada addresses, including the address that Hansjurgens has since used in his appellate filings. Bailey also mailed the motion and hearing notice to two registered agents of Hako-Med (EastBiz.com, Inc. and Alive, Inc.) and Hansjurgens's attorney, Craig Marc Rappel.[7] The Bankruptcy Noticing Center certified that it too mailed notice to of the hearing to three Nevada addresses. Not only that, but Bailey's counsel called Rappel in yet another attempt to inform Hansjurgens of the revival proceedings. And as Hansjurgens's participation in the appellate process reflects, Hansjurgens had actual notice of the revival proceedings and an opportunity to be heard.

To be sure, Bailey could have attempted service personally or by publication, but due process did not require him to do so. *See Arrington*, 438 F.3d at 1350 (due process does not require notice that is "*ideal* under all the circumstances, but rather" notice that "is *reasonable* under all the circumstances"). We conclude that service by mail to the six addresses here was "reasonably calculated . . . to apprise" Hansjurgens of the revival proceedings and to allow him to present objections. *See Mullane*, 339 U.S. at 314.

---

[7] At the time, Hansjurgens was proceeding *pro se*, but Rappel had represented him in prior proceedings. Rappel resumed representing Hansjurgens for his appeal in this Court until Rappel passed away in January 2023 and current counsel took over.

## V.    CONCLUSION

For the reasons we have explained, we affirm the district court's revival order.

**AFFIRMED**.